## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2025-NMSC-010

Filing Date: December 7, 2023

No. S-1-SC-37879

STATE OF NEW MEXICO,

      Plaintiff-Petitioner,

v.

JEREMIAH JOHN GURULE,

      Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Christina P. Argyres, District Judge**

Hector H. Balderas, Attorney General
Emily C. Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Respondent

## OPINION

**THOMSON, Justice.**

**{1}** Defendant stood accused of killing his girlfriend by repeatedly stabbing her. Defendant was tried, and the jury found him guilty of second degree murder, a second degree felony, and tampering with evidence, a third degree felony. *See* NMSA 1978, § 30-2-1(B) (1994); NMSA 1978, § 30-22-5(B)(1) (2003). While he awaited trial, Defendant remained in custody as competency questions were resolved. He was isolated for much of that time due to his violence toward staff and the other inmates. On the eve of trial, Defendant filed a motion to dismiss for violation of his speedy trial rights. After a thorough examination of the procedural timeline, the district court denied his motion. The Court of Appeals, in a split decision, reversed Defendant's convictions.

*State v. Gurule*, A-1-CA-35724, mem. op. ¶¶ 1, 33 (N.M. Ct. App. July 31, 2019) (nonprecedential). The Court reexamined the trial court's findings and conclusions and determined that Defendant's speedy trial rights were violated because of the length of the delay, reasons for the delay, and the "extreme prejudice" to Defendant. *Id.* ¶ 30. We granted certiorari.

**{2}** In accordance with the required standard of review, we defer to the district court's findings regarding Defendant's lack of showing of particularized prejudice, his failure to assert the right to a speedy trial in a meaningful way, and the extent to which "Defendant was engaged in gamesmanship." In doing so, we affirm that delays attributable to ascertaining a defendant's competence to stand trial "are chargeable to the defendant and must be excluded from any speedy trial analysis." *State v. Mendoza*, 1989-NMSC-032, ¶¶ 8-10, 108 N.M. 446, 774 P.2d 440. For those reasons, we reverse the Court of Appeals, affirm the district court's denial of Defendant's motion to dismiss, and remand to the Court of Appeals.[1]

## I.      SIXTH AMENDMENT: RIGHT TO A SPEEDY TRIAL

**{3}** The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, "the accused shall enjoy the right to a speedy and public trial."[2] As we have recognized, the speedy trial right "escapes precise definition." *State v. Garza*, 2009-NMSC-038, ¶ 11, 146 N.M. 499, 212 P.3d 387. Rather, it is "amorphous, slippery, and necessarily relative." *Id.* (text only)[3] (citation omitted). "Therefore, the substance of the speedy trial right is defined only through an analysis of the peculiar facts and circumstances of each case." *Id.*

**{4}** The first step in determining whether there has been a speedy trial violation is to divide the overall trial delay into discrete periods to allow for manageable units of analysis. *See generally id.* ¶¶ 13-14; *State v. Ochoa*, 2017-NMSC-031, ¶¶ 4-6, 406 P.3d 505. We then attribute each of those units of delay to the fault of the state or the defendant. *See, e.g.*, *Garza*, 2009-NMSC-038, ¶ 18. There are circumstances where a delay cannot be attributed to either party, and those delays are weighed neutrally. *See id.* The district court entered specific findings relating to Defendant's claim of denial of his speedy trial rights. They are summarized in relevant part as follows.

---

1Defendant raised five arguments on appeal to the Court of Appeals. The Court of Appeals reversed the district court on speedy trial grounds and therefore did not address Defendant's other arguments. We remand for the Court of Appeals to address the remaining arguments.

2Defendant does not clarify whether his speedy trial claim is brought under the Sixth Amendment to the United States Constitution or Article II, Section 14 of the New Mexico Constitution. He does analyze the *Barker* factors, which arise from the United States Supreme Court case *Barker v. Wingo*, 407 U.S. 514 (1972). New Mexico adopted the Barker factor analysis in *Zurla v. State*, 1990-NMSC-011, 109 N.M. 640, 789 P.2d 588.

3The "text only" parenthetical as used herein indicates the omission of all of the following—internal quotation marks, ellipses, and brackets—that are present in the quoted source, leaving the quoted text itself otherwise unchanged.

## A. Procedural Timeline

{5}    In April 2010, Defendant was arrested for murder and tampering with evidence. Defendant spent the duration of the case from indictment to trial, a period of approximately sixty-nine months, in custody.

{6}    The State entered its appearance about one month after the arrest. Defense counsel did the same two weeks later and simultaneously filed a speedy trial demand. From June 1, 2010, until October 21, 2010, both parties filed various pretrial motions as the case proceeded toward trial. On October 21, 2010, at Defendant's request, the trial judge filed an order to stay all proceedings to allow for a determination of Defendant's competence. Following entry of the order, Defendant filed a notice of the defense of insanity. Defendant also requested an order to show cause because of the delay in his transfer to the New Mexico Behavioral Health Institute (NMBHI). He was eventually transported to NMBHI, and in August 2011, NMBHI found Defendant competent to stand trial. Defendant objected and indicated he would hire an expert to contest the finding of his competence and that the new evaluation would take two months. A competency hearing was then set for October 2011, but Defendant requested a continuance of the proceeding because defense counsel was out of state. The hearing was reset for December 6, 2011 (first reset), and for unknown reasons, that hearing was cancelled.

{7}    Over the course of approximately the next nineteen months, Defendant's competency hearing was reset again, four more times. After the December 6, 2011, hearing was cancelled, the hearing was reset for July 24, 2012 (second reset). Then, on July 2, 2012, the State sought a new competency evaluation at the recommendation of the original evaluating physician "due to the [year-long] delay since the original evaluation." The district court agreed, ordered an updated competency evaluation at NMBHI, and continued the competency hearing. Defendant was transported to NMBHI on September 18, 2012, and the competency hearing was reset for January 28, 2013 (third reset). Two weeks before the hearing, the State filed a motion requiring disclosure of Defendant's health information. Defendant acknowledged that he had not provided the necessary documentation, and the State was compelled to file a stipulated motion to continue. This resulted in a resetting of the competency hearing to May 22, 2013 (fourth reset). On the scheduled date of the May competency hearing, NMBHI filed a written objection to the subpoenas, and as a result the competency hearing was pushed to June 26, 2013 (fifth reset). At the June hearing, the court found Defendant competent and set a jury trial for five months later.

{8}    Defendant's trial date was reset four times over the next thirty-one and one half months following several discovery disputes, defense motions or stipulations to continue, and other procedural delays. On November 13, 2013, the State filed a stipulated motion to continue in order to pursue plea options. The trial was reset for July 7, 2014, (first trial reset) followed by additional discovery motions, which resulted in the State's motion to continue to resolve the issues. Due to discovery disputes from both parties, the court reset the trial for November 17, 2014 (second trial reset). On the eve of trial, Defendant filed a motion to continue the November 17 setting, stating that his

expert needed time to evaluate Defendant's state of mind. Speedy trial issues were raised, and the parties agreed that the delay would count against Defendant. The trial was reset for February 2, 2015 (third trial reset), but a month after a new scheduling order was issued, the case was reassigned to a different judge, who reset the trial on a docket beginning January 25, 2016 (fourth trial reset). After the latest reset, both the State and the defense moved the matter toward trial by filing several motions, including motions to suppress and motions to exclude.

**{9}** As trial approached, Defendant filed a motion to dismiss based on violation of his speedy trial right. The district court held an evidentiary hearing on Defendant's motion on January 21, 2016, where Defendant submitted an affidavit describing the prejudice he experienced in segregation. In addition, a correctional officer testified about Defendant's violent behavior while incarcerated and the need to place Defendant in solitary confinement.

**{10}** Trial began on February 8, 2016. After a seven-day trial, Defendant was convicted of second degree murder and tampering with evidence. Defendant appealed based on violation of his speedy trial right, and the Court of Appeals reversed. *Gurule*, A-1-CA-35724, mem. op. ¶ 1. With this understanding of the procedural history, we now summarize how each court has analyzed Defendant's speedy trial motion, beginning with the district court.

## B. The District Court's Disposition of the Speedy Trial Motion

**{11}** In order to decide whether a defendant's speedy trial right was violated, courts weigh four factors relating to the delay: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530 (the *Barker* factors). None of these factors are dispositive, and no single factor alone is necessary or sufficient. *See id.* at 533.

**{12}** The first factor is "a triggering mechanism," which starts an "inquiry into the other factors that go into the balance." *Id*. at 530. Any delay longer than eighteen months in a complex case such as this one is presumptively prejudicial and triggers an analysis of the other *Barker* factors. *State v. Spearman*, 2012-NMSC-023, ¶ 21, 283 P.3d 272. In this case, because fifty-one months had passed since the triggering date, the district court found that "the delay necessitates analysis of the other *Barker* factors."

**{13}** The district court next divided the total delay into specific periods and assigned responsibility for each period. It concluded that thirty-three months of the delay weighed against the State, twenty months weighed neutrally, and sixteen months weighed against Defendant. The district court noted that the State was responsible for most of the periods of delay but found that the delays did not weigh heavily against the State because the delays were unintentional and Defendant stipulated to many of the continuances that the State requested. The district court also commented that it appeared "to some extent Defendant was engaged in gamesmanship" because his speedy trial motion asked that several of the stipulated delays be held against the State. These delays included the motion to continue the October 11, 2011, hearing; the motion

to send Defendant for a second evaluation; the January 22, 2013, motion to continue the January 28, 2013, competency hearing; the November 13, 2013, motion to continue for plea negotiations; and the June 20, 2014, request to resolve discovery issues. In addition to these stipulated continuances, Defendant requested his own continuances, including the first hearing to evaluate Defendant's competency and the motion to continue the November 17, 2014, trial setting.

{14}   Next, the district court looked at Defendant's assertion of the speedy trial right. While the district court found that Defendant asserted his speedy trial right with each entry of appearance, the court concluded that these assertions were made as a matter of course rather than as a strong assertion of the right. In addition, the court found that Defendant moved to dismiss based on speedy trial only on the eve of trial and therefore gave the motion little weight.

{15}   Finally, the district court evaluated whether Defendant suffered any particularized prejudice. The court reasoned that, although Defendant was incarcerated both during and while awaiting trial, he still needed to show that particularized prejudice incurred from the delay. Defendant claimed he suffered particularized prejudice because of anxiety he developed while he was segregated from the other inmates. The district court rejected this claim, concluding that the detention center made efforts to put him in the general population, but that each time a transfer was initiated, Defendant's own violent actions prevented the transfer. This resulted in continued placement in the segregated unit. The district court pointed to testimony by staff members at the jail that administration attempted to move Defendant into the general population, but it acknowledged that Defendant's behavior sabotaged those efforts. The district court also considered whether Defendant's defense was impaired by the delay. The district court did not find prejudice to the defense because, although Defendant alleged that some of his witnesses were no longer available when the trial dates were changed, he did not assert that the witnesses were material or show how those witnesses would have helped his defense.

{16}   Considering all of these factors, the district court concluded that although the *length* of the delay weighed heavily against the State, the *reasons* for delay did not weigh heavily against the State. In addition, the district court gave minimal weight to Defendant's assertion of the speedy trial right, as well as Defendant's claim of particularized prejudice. Therefore, the district court found no constitutional violation of Defendant's speedy trial right. We turn next to the Court of Appeals' basis for reversing the district court on speedy trial grounds.

## C.   Court of Appeals' Review of the District Court's Decision on the Speedy Trial Motion

{17}   Defendant appealed the district court's decision to the Court of Appeals, which reweighed the *Barker* factors de novo. *Gurule*, A-1-CA-35724, mem. op. ¶¶ 3, 30. The Court of Appeals agreed that the case was complex and that the eighteen-month threshold was the appropriate trigger for analysis of the rest of the speedy trial factors. *Id*. ¶ 4. It also agreed that a "delay of approximately seventy months" weighs heavily

against the State. *Id*. ¶ 5. Weighing the reasons for delay, the Court of Appeals concluded that thirty-seven months weighed against the State, twenty months weighed neutrally, and thirteen months weighed against Defendant. *Id.* ¶ 18. Regarding Defendant's assertion of his speedy trial right, the Court of Appeals agreed with the district court's conclusion that Defendant's assertions were mostly either pro forma or made on the eve of trial and therefore weighed "only slightly in Defendant's favor." *Id*. ¶ 21.

**{18}**   The Court of Appeals further considered prejudice to Defendant. While the district court found no particularized prejudice, the Court of Appeals held there was "extreme prejudice" to Defendant, acknowledging that the majority of the delay was administrative or procedural and not intentional but weighing the reasons for the delay heavily against the State. *Id*. ¶¶ 18, 29. After weighing the four factors, the Court of Appeals concluded that Defendant's right to speedy trial was violated, reversed the judgement and sentence, and remanded with instructions to dismiss the charges. *Id*. ¶¶ 30-31.

**{19}**   We granted the State's petition for writ of certiorari. We disagree with the Court of Appeals' decision to weigh the reasons for delay heavily against the State.[4] *Id*. ¶ 30. Instead, we weigh the reasons for delay in large part against Defendant because much of the delay was the result of the multiple considerations of Defendant's competence to stand trial. The Court of Appeals erred in weighing that delay against the State. Finally, in light of Defendant's behavior while in confinement and because he did not show particularized prejudice, we disagree that Defendant suffered extreme prejudice.

## II.   DISCUSSION

## A.   Standard of Review

**{20}**   As previously discussed, "In examining whether a defendant has been deprived of his constitutional right to a speedy trial, we use the four-factor test set forth in *Barker*." *Ochoa*, 2017-NMSC-031, ¶ 4. Importantly however, "[w]e defer to the district court's factual findings in considering a speedy trial claim, but weigh each factor de novo." *Id.* We accept the standard outlined by the United States Supreme Court that factual findings of a district court are "entitled to substantial deference and will be reversed only for clear error." *United States v. Taylor*, 487 U.S. 326, 337 (1988). Like here, when a district court considers the *Barker* factors "and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Id.* We turn now to our analysis.

---

4The Court of Appeals correctly calculated and weighed some portions of the delay during Defendant's pretrial incarceration. We do not see a need to recite those. Instead, this opinion will only discuss, in detail, the periods of delay for which this Court's weighing differs from the Court of Appeals' weighing. The Appendix delineates each period of delay, lists how each court weighed the delay periods, and summarizes results of the new calculations described in this opinion.

**B.** *Barker* **Factors**

**1.** **Length of Delay**

**{21}** Whether the length of delay triggers an inquiry into the other three *Barker* factors depends on the complexity of the case. *Barker*, 407 U.S. at 530-31. In New Mexico, the speedy trial inquiry triggers at "twelve months for simple cases, fifteen months for cases of intermediate complexity, and eighteen months for complex cases." *Garza*, 2009-NMSC-038, ¶ 2. It is undisputed that this was a complex case, so the triggering delay for analysis of the other *Barker* factors was eighteen months. The total delay of approximately sixty-nine months in this case exceeded the eighteen-month threshold by fifty-one months, and therefore an analysis into the other three *Barker* factors is clearly warranted. *See State v. Serros*, 2016-NMSC-008, ¶¶ 23-24, 366 P.3d 1121 (holding that a fifty-one-month total delay in a case of undetermined complexity weighs heavily against the state); *State v. Flores*, 2015-NMCA-081, ¶ 7, 355 P.3d 81 (holding that a sixty-two-month total delay in a complex case weighs heavily against the state).

**{22}** It is important to note that while a delay beyond the eighteen-month limit is "presumptively prejudicial" in a complex case, the analysis of the fourth *Barker* factor, actual prejudice, is separate from this conclusion and relates to Defendant's pretrial incarceration in this case. *See Garza*, 2009-NMSC-038, ¶¶ 6, 12, 20-21, 35 (explaining that a presumptively prejudicial delay triggers analysis into the other factors, and differentiating presumptive prejudice from prejudice due to pretrial detention or pretrial release restrictions). Accordingly, we hold that a sixty-nine-month delay weighs heavily against the State as to the first *Barker* factor. We therefore move on to analysis of the other *Barker* factors.

**2.** **Reason for the Delay**

**{23}** *Barker*'s second factor, the reason for delay, is "[t]he flag all litigants seek to capture." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). Our examination of the reasons for delay recognizes that "different weights should be assigned to different reasons." *Barker,* 407 U.S. at 531.

**{24}** In cases where a defendant causes or benefits from the delay, the time weighs against the defendant. *See Serros*, 2016-NMSC-008, ¶ 43. If a prosecutor deliberately delayed trial, the delay weighs heavily against the state. *Id*. ¶ 29. Mere negligence or administrative delays weigh less heavily against the state. *Id*. "Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker*, 407 U.S. at 531. We now turn to the particular reasons for delay in this case and conclude, as the factual and procedural recitation provides, that the delay here was principally attributable to Defendant's competency determination and the numerous stipulated continuances that served to assure Defendant's competence to stand trial. Therefore, the delays do not weigh against the State.

**{25}** We begin with a discussion of how competency determinations can affect a court's review of a defendant's speedy trial claim. Raising competence during the

course of a proceeding has a unique impact upon the proceeding and upon the ability to bring the matter to conclusion. Unlike virtually every other reason for a delay, raising competence causes all other work on the case to stop. Whenever a question appears, by motion of the parties or the court, as to the mental competence of a defendant to stand trial, "any further proceeding in the cause shall be suspended until the issue is determined." NMSA 1978, § 31-9-1 (1993). That is, no criminal jeopardy confronts the defendant as long as a question of competence remains undecided. "And one who is incompetent cannot stand trial." *Mendoza*, 1989-NMSC-032, ¶ 8; *see also Pate v. Robinson*, 383 U.S. 375, 386 (1966) (holding that conviction of a legally incompetent accused violates due process).

**{26}**   This Court has previously held that delay pending a defendant's competency determination does not impact the defendant's speedy trial right. *Mendoza*, 1989-NMSC-032, ¶¶ 8-9 ("During the time an accused's competency is being assessed, he or she is unavailable for trial. Regardless of who initiates the proceeding a competency examination is clearly on behalf of the accused and in no way infringes on that person's speedy trial rights. . . . These delays are chargeable to the defendant and must be excluded from any speedy trial analysis."). In *Mendoza*, we explained that the competing constitutional interests at stake▫due process demands that a defendant be competent to stand trial *and* that a speedy trial is the defendant's right▫reveal that delays from determinations of competence are incurred for the benefit of the defendant. *See id.* ¶¶ 4, 8-9.

**{27}**   Our conclusion that delays due to competency evaluations are chargeable to the defendant is consistent with other jurisdictions' recognition that "a defendant may not complain of delays occasioned by the trial court's attempt to protect his interests." *United States v. Murphy*, 241 F.3d 447, 454 (6th Cir. 2001) (citing *United States v. Antwine*, 873 F.2d 1144 (8th Cir. 1989)); *see also* Mass. R. Crim. P. 36(b)(2)(A)(i) (excluding from the computation of trial delay any period of "delay resulting from an examination of the defendant, and hearing on, his mental competency, or physical incapacity"); 18 U.S.C. § 3161(h)(1)(A) (excluding from delay-of-trial computations any period of delay caused by proceedings to determine the defendant's mental competence); *Henderson v. United States*, 476 U.S. 321, 326-27 (1986) (excluding from determinations of trial delay "any period of delay" from "proceedings concerning the defendant" such as "time consumed . . . by a competency examination" without requiring that the "period of delay be reasonable" (brackets, internal quotation marks, and citations omitted)); *United States v. McGhee*, 532 F.3d 733, 737 (8th Cir. 2008) (holding that delay for proceedings to determine the defendant's competence is "excludable under the [Speedy Trial Act], whether reasonable or unreasonable").

**{28}**   The Court of Appeals relies on *State v. Stock*, 2006-NMCA-140, 140 N.M. 676, 147 P.3d 885, to conclude that periods of procedural delay should be parsed from within the larger category of delay for competency determinations and allocated to the State. *See Gurule*, A-1-CA-35724, mem. op. ¶¶ 8, 10, 13. This interpretation, however, is contrary to *Mendoza*, in which this Court counted the entirety of the competency proceedings, not just the competency hearing itself, against the defendant because the process of adjudicating competence is "for the benefit of the defendant" and

"chargeable to the defendant." 1989-NMSC-032, ¶ 9; *see also State v. Jaramillo*, 2004-NMCA-041, ¶ 11, 135 N.M. 322, 88 P.3d 264 (interpreting *Mendoza* as counting the duration of competency proceedings against the accused because those "proceedings are clearly for the benefit of the accused"). The Court of Appeals therefore erred in allocating weight against the State for three periods of procedural delay that were directly related to determining Defendant's competence.

**{29}** We also do not see *Stock* as supporting the Court of Appeals' parsing of delays that were due to Defendant's competency evaluation. The *Stock* Court considered a speedy trial issue where "the delay [was] in part attributable to the neglect of [a defendant's] overworked public defenders." 2006-NMCA-140, ¶ 1; *see also Serros*, 2016-NMSC-008, ¶¶ 30, 42 (characterizing the issue in *Stock* as involving "attorney neglect" and as considering "the fairness of attributing to the defendant delays caused by defense counsel when the defendant was effectively blameless"); *State v. Fierro*, 2012-NMCA-054, ¶ 43, 278 P.3d 541 (distinguishing *Stock* because in *Fierro* "the district court did not find that the delay was caused by the poor performance of [the d]efendant's attorneys, their neglect, or any institutional deficiencies of the public defender system"). In *Stock*, both the state and defense counsel failed to take appropriate action on the case, including failing to communicate the results of the defendant's competency evaluation, during a delay of an extraordinary length. *Stock*, 2006-NMCA-140, ¶¶ 3-5. The *Stock* Court concluded that "in [its] particular case . . . both parties bear some responsibility for the delay." *Id.* ¶ 19.

**{30}** Notably, however, the *Stock* Court did not "quarrel with the [s]tate's assertion that delays caused by competency evaluations should generally not count against the state for speedy trial purposes because the state cannot try an incompetent defendant." *Id.* Rather, under the circumstances presented, the Court could not "agree that needlessly taking one and a half years to communicate the results of such evaluations is for a defendant's benefit." *Id.* ¶ 21; *see also Serros*, 2016-NMSC-008, ¶¶ 43, 46 (adopting *Stock* in another case involving attorney neglect and explaining that the court will not weigh stipulated delays against the defendant when the defendant "neither caused nor consented to those stipulations"). No such attorney neglect is at issue in this case.

**{31}** Turning to the case at hand, the Court of Appeals weighed the period from November 3, 2010, to February 22, 2011, amounting to three months and nineteen days, against the State as an administrative delay. *Gurule*, A-1-CA-35724, mem. op. ¶ 8. While it is true that Defendant spent this time in custody waiting for a room at NMBHI, it is also true that the district court found Defendant incompetent to stand trial on November 3, 2010. Therefore, it is obvious both that the State could not proceed to trial without violating Defendant's right to due process and that Defendant was not prejudiced because he did not face custody. Therefore, we conclude as required by *Mendoza* that this period is chargeable to Defendant and not the State because the State could not proceed to trial as a matter of law.

**{32}** The second period amounts to seven months and eighteen days from December 6, 2011, to July 24, 2012, which the Court of Appeals weighed against the State due to a reset competency hearing. *Id.* ¶ 10. Once again, during this time Defendant was

considered incompetent to stand trial. As stated before, this period must be weighed against Defendant and not against the State.

**{33}** The third period of delay erroneously allocated by the Court of Appeals was one month and twenty-five days from July 24, 2012, to September 18, 2012, where the prosecution asked for a new evaluation of competence based on the previous evaluator's recommendation. *Id.* ¶ 11. During this time, Defendant stipulated to the State's motion for a more current mental health evaluation. This period of time also included the time Defendant awaited transportation to NMBHI. *Id.* Prosecutors have a duty to inspect a defendant's competence to stand trial lest they violate due process. *Criminal Justice Standards on Mental Health*, 7-4.3(b) (Am. Bar Ass'n 2016). Although the filing was attributed to the State, defense counsel stipulated to the motion, and the delay was in Defendant's best interest, based on the advice of his evaluator. The Court of Appeals erroneously weighed this period against the State as administrative delay. We weigh this third period against Defendant.

**{34}** We are concerned about an outcome that discourages the prosecution from requesting or agreeing to a competency evaluation for fear of having the case dismissed on speedy trial claims. This complements our view that if Defendant were found incompetent to stand trial, any order to detain him for treatment to attain trial competence aligns with protecting Defendant and society in general and is therefore not punitive. *See State v. Baca*, 2019-NMSC-014, ¶ 9, 448 P.3d 576. Finally, the reasons for the delay in this case were not due to bad faith or negligence on behalf of the State.

**{35}** As stated herein, we defer to the district court's findings of fact. Significantly, the district court concluded that none of the delay by the State "was intentionally caused and there were no unnecessarily prolonged periods of delay, but rather the parties appear [to] have been moving toward trial," based in large part on the district court's own review of the delay between Defendant's April 19, 2010, indictment and the February 8, 2016, jury trial. We hereby apply our revisions for the three procedural periods of delay to the conclusions of the Court of Appeals on its assessment of the reasons for approximately seventy months of delay. Accordingly, and as the Appendix documents, we hold that twenty-four months weigh against the State, twenty months weigh neutrally, and twenty-six months weigh against Defendant. Of the twenty months that weigh neutrally, Defendant's questionable competence caused most of that delay. We therefore correct the Court of Appeals, *Gurule*, A-1-CA-35724, mem. op. ¶¶ 18, 30 (concluding that the reason for delay weighs "heavily against the State"), and we do not weigh the second *Barker* factor against the State.

### 3. Assertion of the Right

**{36}** We turn next to the third *Barker* factor, a defendant's assertion of the speedy trial right, and consider "[w]hether and how a defendant assert[ed] his right." *Barker*, 407 U.S. at 531. A "defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* at 531-32. The *Barker* Court "emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532. In

addition, a defendant who "invoked his right to a speedy trial in words while simultaneously operating in a dilatory manner leads us to conclude that [the d]efendant's assertions of the right were at best nominal and at worst an act of gamesmanship." *State v. Steinmetz*, 2014-NMCA-070, ¶ 62, 327 P.3d 1145.

**{37}** When weighing delay against a defendant, we "first consider whether [the d]efendant is to blame for the delays . . . because he has personally caused or acquiesced to the delay in his case." *Serros*, 2016-NMSC-008, ¶ 43; *see also United States v. Margheim*, 770 F.3d 1312, 1328 (10th Cir. 2014) ("Moving for many continuances, or otherwise indicating that the defendant is not pursuing a swift resolution of his case will tip the balance of this factor heavily against the defendant." (text only) (citation omitted)). If delay does not weigh against a defendant, "then we consider whether the [s]tate has met its obligation to bring [the d]efendant's case to trial." *Serros*, 2016-NMSC-008, ¶ 43.

**{38}** In this case, the defense stipulated to at least six continuances and independently moved for continuance on the eve of trial. Therefore, we not only defer to the finding of the district court that Defendant was "to some extent . . . engaged in gamesmanship," but we also find it well supported in our review.[5] *See State v. Moreno*, 2010-NMCA-044, ¶ 14, 148 N.M. 253, 233 P.3d 782 ("The district court characterized this conduct as a form of gamesmanship in which [the d]efendant was agreeing to continuances only because he later intended to file a speedy trial claim."); *see also Barker*, 407 U.S. at 534-35 ("[T]he record strongly suggests that . . . [the defendant] hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges. . . . More important than the absence of serious prejudice, is the fact that Barker did not want a speedy trial.").

**{39}** We consider Defendant's behavior in weighing his assertion of the speedy trial right. *Serros*, 2016-NMSC-008, ¶ 43. Here, Defendant asserted his right to a speedy trial five times: three times during entries of appearances of counsel and twice in connection with his October 2015 motion to dismiss based on violation of his speedy trial rights. However, "pro forma motions are generally afforded relatively little weight in this analysis." *State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061. In this case, the district court gave little weight to the three speedy trial demands on entry of appearance. Further, this Court recognizes that "the closer to trial an assertion is made, the less weight it is given." *Moreno*, 2010-NMCA-044, ¶ 33. Here, Defendant's motion to dismiss for violation of speedy trial also earns little weight as the motion was made within a few months of trial after most of the delay had already passed. Finally, because Defendant acquiesced to several of the State's continuances and moved for

---

[5]According to the State, this is the second time that Defendant has been charged with murder and has filed a motion to dismiss for speedy trial violation at the very last minute. The State alleged at trial and in its briefing that "it is certainly understandable that the defense filed this speedy trial motion⌷after all the same strategy worked in getting the Defendant's first homicide case dismissed." It does appear that in 2011 a district court concluded in a separate case that "Defendant's right to a speedy trial as guaranteed by the 6th Amendment to the U.S. Constitution . . . has been violated by the delay in bringing the Defendant[] to trial." *See* Order of Dismissal, *State v. Gurule*, D-202-CR-2005-02559 (May 11, 2011).

his own continuances, we do not weigh the third *Barker* factor against the State. *See Garza*, 2009-NMSC-038, ¶¶ 38-39.

### 4. Particularized Prejudice

**{40}** The fourth and final factor for us to consider is prejudice to the defendant. *Barker*, 407 U.S. at 532. As it relates to pretrial incarceration, such prejudice must be particularized, and it weighs in the defendant's favor when the "anxiety suffered is undue." *Ochoa*, 2017-NMSC-031, ¶ 51 (internal quotation marks and citation omitted). Again, this element is not to be confused with "presumptively prejudicial delay," which "refers to prejudice to the fundamental right to a speedy trial, not to specific prejudice covered by the fourth *Barker* element." *Garza*, 2009-NMSC-038, ¶ 19 (text only) (citation omitted); *see Gurule*, A-1-CA-35724, mem. op. ¶¶ 22-26.

**{41}** The Court of Appeals rejected the district court's finding that Defendant's pretrial confinement did not cause undue anxiety and concern. In doing so, the Court of Appeals incorrectly concluded that the suffering of "extreme prejudice" occurred as a matter of law based on the length of time Defendant was incarcerated before trial. *See Gurule*, A-1-CA-35724, mem. op. ¶¶ 23, 29 ("Although we acknowledge that Defendant's initial and continued placement in segregation was the result of his conduct while in custody, we cannot ignore the oppressive impact the conditions and duration of his incarceration had on Defendant.").

**{42}** The Court of Appeals' conclusion that Defendant "suffered extreme prejudice," *id.* ¶ 29, is not supported by the record and, more importantly, ignores deference to the trial court's discretion in finding that Defendant showed no particularized prejudice. In addition, the Court of Appeals' conclusion is not supported by precedent in that, like all other *Barker* factors, a claim of particularized prejudice must be made "through a review of the circumstances of a case, which may not be divorced from a consideration of the [s]tate and the defendant's conduct and the harm to the defendant from the delay." *Garza*, 2009-NMSC-038, ¶ 13; *see Barker*, 407 U.S. at 533. We undertake such a review now.

**{43}** In *Barker*, 407 U.S. at 532, "[t]he United States Supreme Court . . . identified three interests under which we analyze prejudice to the defendant: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Garza*, 2009-NMSC-038, ¶ 35 (internal quotation marks and citation omitted). *Fierro*, 2012-NMCA-054, is on point for our analysis of prejudice. In *Fierro*, the defendant claimed his speedy trial rights were violated due to a fifty-five-month period between arrest and trial. *Id.* ¶¶ 36, 57. His bond was set at $250,000, cash only, due to allegations that the defendant had threatened the victim and her family and that the defendant tried to have the victim killed. *Id.* ¶ 58. Because the defendant could not post bond, he remained incarcerated during the entire pretrial period and was in segregation for the majority of his incarceration as a necessity "for [the d]efendant's own safety." *Id.* The defendant received prescribed medication to help deal with the mental toll of his incarceration. *Id.* ¶¶ 57-58. The *Fierro* Court addressed the three interests underlying prejudice analysis,

concluded ultimately that the failure to show concrete prejudice defeated the defendant's speedy trial claim, and weighed the prejudices stemming from the defendant's pretrial incarceration neutrally. *Id.* ¶ 60. With reference to *Fierro*, our analysis here examines each of the three prejudice interests separately.

### a.      Prevent oppressive pretrial incarceration

**{44}**    The district court analyzed prejudice to Defendant, the fourth *Barker* factor, using the particular facts surrounding Defendant's segregation. Defendant was in segregation because his behavior was incompatible with placement in the general population and because the prison had an obligation to protect other inmates and staff. In particular, the district court focused on the testimony of a Metropolitan Detention Center officer, Lieutenant Abraham Gallardo. Lieutenant Gallardo testified that the Metropolitan Detention Center made several efforts to move Defendant into the general population and reported that Defendant's violent actions stopped any and all efforts to do so. Defendant, like the defendant in *Fierro*, remained in custody and in segregation for safety reasons. *Fierro*, 2012-NMCA-054, ¶ 58 (describing circumstances that led to the conclusion that the defendant had not demonstrated any particularized or undue prejudice due to his incarceration).

**{45}**    The district court concluded that Defendant was placed in administrative segregation because of his violent behavior, not because of the charges he faced. The district court found several instances where Defendant assaulted or threatened staff. Notably, Defendant assaulted eight staff members at initial booking. The record shows and the district court recognized that jail staff attempted to move Defendant into the general population but that further violent behavior forced his continued segregation. In many ways, Defendant has a weaker argument for a speedy trial claim than that presented in *Fierro*. Custodial segregation of the defendant in *Fierro* "was necessary for [the d]efendant's own safety." *Fierro* 2012-NMCA-054, ¶ 58. In this case, Defendant had more control than the defendant in *Fierro* over whether he remained in segregation or whether he would be allowed into general population, and here, Defendant's own behavior was to blame for the restrictions he faced in segregation. Therefore, any prejudice suffered was due to Defendant's own actions. *See McGhee*, 532 F.3d at 740 ("Any prejudice from pretrial incarceration was attributable to [the defendant's] own acts.") Accordingly, the district court correctly found that Defendant did not demonstrate particularized prejudice due to his time spent in segregation.

### b.      Minimize anxiety and concern of the accused

**{46}**    Next, the district court considered the anxiety and concern of the accused, referring to Defendant's affidavit stating that he was unable to maintain a relationship with his family, suffered from depression and anxiety attacks, and was kept in segregation. While Defendant asserted that he suffered from anxiety and PTSD, he did not specify when his mental conditions started, and, despite "his alleged mental state when he was first imprisoned," the district court declined to speculate that his symptoms were caused by the delay. The district court further declined to find that Defendant's relationship with his family had changed because of incarceration, maintaining instead

that loss of contact with family is a normal consequence of incarceration and that this particular set of circumstances was not unique to Defendant. Given Defendant's erratic and violent behavior even as he was booked, it was entirely reasonable for the district court to find that Defendant did not associate his current mental state with the time he spent in incarceration, taking into consideration Defendant's mental state before he was incarcerated. Defendant failed to state when his alleged mental conditions arose, and given the mental state he exhibited when he was first imprisoned, well before the presumptive-prejudice deadline, this Court will not speculate that the delay in trial caused the issues Defendant alleges.

### c.      Limit the possibility that the defense will be impaired

**{47}**    The district court in this case also found that Defendant did not provide any particular testimony that would have been offered by his missing witnesses. In *Fierro*, the defendant did claim that some potentially exculpatory, albeit speculatory, testimony was lost. 2012-NMCA-054, ¶¶ 59-60 (discussing the defendant's claim concerning the death of a potential witness who the defendant alleged "would have testified that [the victim] and her mother fabricated the charges against him"). Nonetheless, the court in *Fierro* still declined to weigh the fourth factor in favor of the defendant. *Id.* Here, Defendant claimed that his defense was impaired because several witnesses relocated and their memories deteriorated. However, the district court noted that Defendant did not "state with particularity what exculpatory testimony would have been offered" or "present evidence that the delay caused the witness's unavailability," as required by *Garza*, 2009-NMSC-038, ¶ 36 (brackets, internal quotation marks, and citation omitted). Significantly, the Court of Appeals does not discuss or give weight to any consideration of Defendant's inability to present a defense. This is significant because *Barker* tells us, "Of these, the most serious is [possible impairment of the defense] because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

**{48}**    Finally, the district court's decision was not contrary to *Ochoa*, 2017-NMSC-031. *Ochoa* directs us to "presume that there was some impairment of the defense" based on the length of pretrial detention, subject to a "[d]efendant's burden of showing particularized prejudice." 2017-NMSC-031, ¶¶ 62, 65; *see id.* ¶ 64 ("In the absence of such proof, this factor does not tip the scale in [the d]efendant's favor."). In addition, the Court of Appeals' reliance on *Serros*, 2016-NMSC-008, ¶¶ 89-90, to support a conclusion that Defendant suffered from extreme prejudice is misplaced. *See Gurule*, A-1-CA-35724, mem. op. ¶ 23. The factual circumstances in *Serros*, including the defendant's pretrial detention and isolation that formed the basis of his speedy trial claim, differ from the case at hand. In *Serros*, this Court relied on unchallenged testimony that other inmates and jail officials had both verbally and physically abused the defendant. *See Serros*, 2016-NMSC-008, ¶ 91 (noting two attacks on the defendant); *State v. Serros*, A-1-CA-31565, mem. op. ¶¶ 11-12, 46 (N.M. Ct. App. Mar. 10, 2014) (nonprecedential) (noting testimony from several witnesses and describing attacks on the defendant by inmates). In greatest contrast to the case at bar, the defendant in *Serros* was not permitted to move out of segregation, despite his repeated requests to do so, for safety concerns *due to the nature of the charges against him*. *See*

*Serros*, 2016-NMSC-008, ¶¶ 6, 91. In our view, the Court of Appeals incorrectly relies on *Ochoa* and *Serros*☒without addressing their reasoning☒to conclude as a matter of law that the length of pretrial incarceration and solitary confinement is enough to find a speedy trial violation. *Gurule*, A-1-CA-35724, mem. op. ¶¶ 22-29. Here, as we have pointed out, Defendant was in segregation not because of the charges he faced but because of his clearly established violent behavior. In addition, the facts surrounding any claim of prejudice to Defendant were not established through "unchallenged testimony" as in *Serros*, 2016-NMSC-008, ¶ 88 (emphasis omitted), but instead they were highly contested facts properly reviewed and decided by the trial court.

**{49}**    We agree with the district court that Defendant has not shown particularized prejudice and that any prejudice he suffered during his time in segregation was the result of his own behavior. Therefore, we decline to weigh the fourth *Barker* factor against the State.

## C.    Dissent

**{50}**    The dissent alleges that "[t]he majority upends this Court's speedy trial jurisprudence"[6] and is in strongest disagreement with the conclusion that the competency proceedings, meant to benefit this Defendant, should be weighed against the Defendant for speedy trial purposes. *Dissent* ¶ 58. The dissent also concludes that Defendant need only show prejudice suffered "as a result of the lengthy pretrial incarceration he endured" and does not need to show actual prejudice. *Dissent* ¶ 93. That is, the dissent would abandon the duty of a court to look for actual prejudice in lieu of a bright-line rule based on the duration of the pretrial incarceration. We disagree. Both positions advanced by the dissent would disrupt or likely require the reversal of years of precedent by this Court.

**{51}**    The dissent allocates the time involved in a competency determination in a way that is directly at odds with *Mendoza*. 1989-NMSC-032, ¶ 9. There, this Court counted the entirety of the competency proceedings, not just the competency hearing itself, against the defendant. *Id.* This Court reasoned that the process of adjudicating competence is "for the benefit of the defendant" and, therefore, "chargeable to the defendant." *Id.*; *see also Jaramillo*, 2004-NMCA-041, ¶ 11 (interpreting *Mendoza* as counting the duration of competency proceedings against the accused because those "proceedings are clearly for the benefit of the accused"). We trust the dissent to acknowledge that underpinning this holding is a defendant whose case comes to a halt during a competency proceeding and who faces no jeopardy to his liberty while his competence is at issue. The dissent fails to clearly justify why that time should be counted against the State. In addition, as we emphasized previously, our conclusion

---

6The dissent also alleges that the majority "engages in a cursory review of the *Barker* factors," assuring the reader that it has taken "the time to discuss each factor and time frame thoroughly." *Dissent* ¶ 58. The dissent's allegation is contradicted by this time and in pages committed by this opinion to the *Barker* factors, including the Appendix herein that lays out in detail the speedy trial calculations by the different courts. What the dissent's lengthy recitation of the time frame reveals more than anything else is that, like the Court of Appeals, it cannot resist its own factual review of the record instead of affording the deference due to the trial court judge who presided in this case.

that delays due to competency evaluations are chargeable to the defendant is consistent with other jurisdictions' recognition that "a defendant may not complain of delays occasioned by the trial court's attempt to protect his interests." *Murphy*, 241 F.3d at 454 (citing *Antwine*, 873 F.2d at 1150 ); *see also* Mass. R. Crim. P. 36(b)(2)(A)(i) (excluding from the computation of trial delay any period of "delay resulting from an examination of the defendant, and hearing on, his mental competency, or physical incapacity"); 18 U.S.C. § 3161(h)(1)(A) (excluding from delay-of-trial computations any period of delay caused by proceedings to determine the defendant's mental competence); *Henderson*, 476 U.S. at 327, 330 (excluding periods of delay for pretrial motions, including motions for determination of competence from filing of the motion to conclusion of the hearing, "whether or not a delay in holding that hearing is reasonably necessary" (internal quotation marks omitted)); *McGhee*, 532 F.3d at 737 (holding that delay for proceedings to determine the defendant's competence is "excludable under the [Speedy Trial Act], whether reasonable or unreasonable").

**{52}** Like the Court of Appeals, the dissent reads *Ochoa* and *Serros* in tandem to conclude that the length of time served in pretrial incarceration is prejudicial on its face. *Gurule*, A-1-CA-35724, mem. op. ¶ 23. We have never announced such a rule. Instead, we have established three interests that the Court considers when analyzing prejudice to the defendant: (1) "oppressive pretrial incarceration," (2) "anxiety and concern of the accused," and (3) "the possibility that the defense will be impaired." *Garza*, 2009-NMSC-038, ¶ 35.

**{53}** While it is true that there is a presumption of prejudice when there is a lengthy incarceration, it is also true that the Defendant must still show some particularized prejudice from his pretrial incarceration. *Ochoa*, 2017-NMSC-031, ¶ 49 ("'[W]e will not speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety a defendant suffers.'" (quoting *Garza*, 2009-NMSC-038, ¶ 35) (alteration in original)). *Ochoa* also emphasizes that "[b]ecause some degree of oppression and anxiety is inherent in every incarceration, 'we weigh this factor in the defendant's favor only where the pretrial incarceration or anxiety suffered is undue.'" *Id*. ¶ 51 (quoting *Garza*, 2009-NMSC-038, ¶ 35). *Ochoa* recognized that a "lengthy and onerous pretrial incarceration may render affirmative proof of prejudice unnecessary to find that the defendant suffered prejudice" but that "the length of incarceration is a counterweight to a defendant's burden of production." *Id*. ¶ 54. Although this Court in *Ochoa* found that the defendant suffered prejudice based solely on the length of the pretrial incarceration, it could not say whether the prejudice was undue. *See id*. ¶ 61. Similarly, the trial court in this case, the court we trust to make such a factual determination, could not say whether the prejudice was undue.

## III.   WEIGHING THE FOUR FACTORS

**{54}** We reaffirm our well-established holding that "the substance of the speedy trial right is defined only through an analysis of the peculiar facts and circumstances of each case." *Garza*, 2009-NMSC-038, ¶ 11. This case exceeded the eighteen-month threshold for presumptive prejudice by approximately fifty-two months, and therefore an analysis of the other three *Barker* factors is necessary. However, we hold that the issue

of Defendant's competence to stand trial caused most of the delay. In addition, both Defendant's pro forma motions and his acquiescence to several continuances weigh against him. We agree with the district court that Defendant did not suffer particularized prejudice because the prejudice he suffered during his time in segregation was the result of his own behavior.

**{55}** "To find a speedy trial violation without a showing of actual prejudice, the Court must find that the three other *Barker* factors weigh heavily against the [s]tate." *State v. Samora*, 2016-NMSC-031, ¶ 23, 387 P.3d 230. Because we conclude that the second and third factors weigh against Defendant and that only the first weighs heavily against the State, we hold that the delay between Defendant's arrest and trial did not violate his right to a speedy trial.

## IV.    CONCLUSION

**{56}** We reverse the Court of Appeals, affirm the district court's denial of Defendant's motion to dismiss, and remand to the Court of Appeals for further consideration of the remainder of Defendant's arguments on appeal.

**{57}  IT IS SO ORDERED.**

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

**DUSTIN K. HUNTER, Judge**
**Sitting by designation**

**AMANDA SANCHEZ VILLALOBOS, Judge**
**Sitting by designation**

**C. SHANNON BACON, Chief Justice, dissenting**

**MICHAEL E. VIGIL, Justice, concurring in dissent**

**BACON, Chief Justice (dissenting).**

**{58}** The majority upends this Court's speedy trial jurisprudence in concluding that a delay of nearly six years in trying Defendant for murder is reasonable. The majority notes that this delay exceeded the eighteen-month threshold for complex cases identified in *State v. Garza*, 2009-NMSC-038, ¶ 2, 146 N.M. 499, 212 P.3d 387, by fifty-one months, which this Court deemed presumptively prejudicial and triggered an analysis into the three other *Barker* factors. *Maj. op.* ¶ 21. *See State v. Gurule*, A-1-CA-35724, mem. op. ¶ 4 (N.M. Ct. App. July 31, 2019) (nonprecedential) (deferring to "the district court's finding that this was a complex case"); *see also Barker v. Wingo*, 407 U.S. 514, 530 (1972) (identifying the four factors as "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant"). Even so,

disregarding the presumption in *Garza*, the majority contends that the reasons for delay are primarily attributable to Defendant, mainly because his competence was at issue throughout this matter. *Maj. op.* ¶¶ 27-30. Under the majority's view, any time spent ascertaining a defendant's competence and upholding the defendant's due process rights will counterbalance any of the State's unreasonable delay and thus permissibly infringe on a defendant's speedy trial rights. Additionally, the majority holds that Defendant had "not shown particularized prejudice and that any prejudice he suffered during his segregation was the result of his own behavior." *Maj. op.* ¶ 49. Accordingly, the majority reverses the Court of Appeals, concluding that Defendant's constitutional right to a speedy trial was not violated. *Maj. op.* ¶¶ 55-56. Because we disagree that the reasons for delay, assertion of the right, and prejudice factors weigh against Defendant, we respectfully dissent. In addition, because the majority engages in a cursory review of the *Barker* factors, we take the time to discuss each factor and timeframe thoroughly.

## I.  THE REASONS FOR DELAY FACTOR SHOULD NOT WEIGH AGAINST DEFENDANT

**{59}**  We agree with the majority that the length of delay weighs heavily against the State. *Maj. op.* ¶ 22. The next factor in the *Barker* analysis requires a court to consider "'the reason the government assigns to justify the delay.'" *Garza*, 2009-NMSC-038, ¶ 25 (quoting *Barker*, 407 U.S. at 531). The majority points to three periods of delay for which it disagrees with the Court of Appeals' analysis but does not describe why it affirms the reasoning for the other periods of delay relevant to this analysis. Because we disagree with some of the majority's and Court of Appeals' conclusions regarding periods of delay not addressed by the majority, we provide a timeline for each period of delay below.

### A.  April 3, 2010, to October 20, 2010

**{60}**  The Court of Appeals stated, "From Defendant's arrest on April 3, 2010, to October 20, 2010, the case was proceeding normally toward trial." *Gurule*, A-1-CA-35724, mem. op. ¶ 7. Accordingly, the Court weighed this period of six months and seventeen days neutrally. *Id.* This determination was not contested by either party. The majority does not address this period of delay and thus seemingly affirms this holding. We would affirm this holding as well.

### B.  October 20, 2010, to November 3, 2010

**{61}**  From October 20, 2010, to November 3, 2010, the district court found Defendant incompetent to stand trial and stayed the proceedings for a competency determination. Citing *State v. Stock*, 2006-NMCA-140, ¶¶ 19-22, 29, 140 N.M. 676, 147 P.3d 885, the Court of Appeals held that this period weighed against Defendant. *Gurule*, A-1-CA-35724, mem. op. ¶ 8. The Court of Appeals reasoned that *Stock* stands for the proposition that delays resulting from competency evaluations weigh against the defendant because they are for the "defendant's benefit." *Id.* The majority affirms this conclusion based on an alternative analysis. *Maj. op.* ¶¶ 26-30. We disagree with both

the majority's and the Court of Appeals' conclusion that delays attributable to competency evaluations should be weighed against the defendant. Moreover, weighing such delays against the defendant, absent a showing of bad faith or deliberate attempts to delay the trial, is contrary to constitutional principles, our jurisprudence, and the United States Supreme Court's jurisprudence on this issue.

**{62}** First, "[i]t is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California*, 505 U.S. 437, 439 (1992). "Suspension of the criminal process where the defendant is incompetent is fundamental to assuring the fairness, accuracy, and dignity of the trial." *State v. Rotherham*, 1996-NMSC-048, ¶ 13, 122 N.M. 246, 923 P.2d 1131.

**{63}** Second, it is important to recognize that the state has a "duty of insuring that the trial is consistent with due process." *Barker*, 407 U.S. at 527. True to this principle, this Court has recognized that "[t]he State has an interest in rendering a defendant competent to stand trial, and, as long as [the defendant] remain[s] dangerous, the State has an interest in committing [the defendant] to protect the defendant[] and the public." *Rotherham*, 1996-NMSC-048, ¶ 23.

**{64}** Therefore, not only do competency evaluations benefit a defendant, they also are beneficial to the state in ensuring that it complies with its constitutional obligations. *See id.* ¶ 13. The majority cites *State v. Mendoza* for the proposition that "a competency examination is clearly on behalf of the accused and in no way infringes on that person's speedy trial rights." 1989-NMSC-032, ¶ 8, 108 N.M. 446, 774 P.2d 440. However, we distinguish between a competency-related delay not infringing on speedy trial rights and that delay being *solely* for the benefit of the defendant, especially as the latter proposition is not expressly supported by the underlying authorities on which *Mendoza* relied. *See, e.g., Commonwealth v. Millard*, 417 A.2d 1171, 1176 (Pa. 1979) (asserting that competency-related "delay must be attributed to the unavailability of [the defendant] and, therefore, excluded from" a speedy trial analysis (internal quotation marks and citation omitted)); *Jones v. People*, 711 P.2d 1270, 1281 (Colo. 1986) (excluding competency-related delay from speedy trial computation); ABA Standards for Criminal Justice, *Speedy Trial and Timely Resolution of Criminal Cases* § 12-2.3(a)(i) (3d ed. 2006) (including "examination and hearing on competency" in the "periods [that] should be excluded in computing allowable time under the speedy trial rule or statute"). *Mendoza* and its underlying authorities acknowledge that competency-related delays benefit both parties and clarify that such delays should be *excluded* from speedy trial analysis—in other words, weighed neutrally—rather than weighed against the defendant.

**{65}** Moreover, Defendant contends that he should not have to choose between his right to a speedy trial and his due process rights. We agree. This proposition is supported by this Court's analysis in *State v. Serros*, 2016-NMSC-008, 366 P.3d 1121, interpreting *Stock*, 2006-NMCA-140, on which the Court of Appeals relies. Accordingly, we disagree with the majority's conclusions regarding *Stock* and its implications for this analysis. In *Serros*, we discussed the holding in *Stock* and its implications for a speedy

trial analysis. *See Serros*, 2016-NMSC-008, ¶¶ 35-38. We began by noting that the *Stock* Court "held that both parties shared responsibility for the delay" related to the defendant's competency evaluation under the circumstances in that case. *Id.* ¶ 36 (citing *Stock*, 2006-NMCA-140, ¶ 19). The fact that the delay in *Stock* was "extraordinary" was partially attributable to the state because it had done "'little or nothing to ascertain what was happening in the case or to move the case forward.'" *Serros*, 2016-NMSC-008, ¶ 37 (quoting *Stock*, 2006-NMCA-140, ¶ 25). We determined that in *Stock*, although the delay related to the defendant's competency evaluations, "the reasons for the delay weighed against the State because of its 'failure to monitor the case and ensure that steps were being taken to bring [the defendant] to trial in a timely manner.'" *Serros*, 2016-NMSC-008, ¶ 37 (alteration in original) (quoting *Stock*, 2006-NMCA-140, ¶ 29).

**{66}** We found *Stock*'s reasoning to be "compelling," especially "when the delay is extraordinary and the defendant is detained while awaiting trial." *Serros,* 2016-NMSC-008, ¶ 38. We explained that "[u]nder such circumstances, we agree that it may be appropriate to shift the focus to the State's efforts to bring the case to trial, at least when the record demonstrates that the defendant did not affirmatively cause or consent to the delay." *Id.* This aligns with the United States Supreme Court's decision in *Vermont v. Brillon*, 556 U.S. 81 (2009). The *Brillon* Court announced for the first time that some delay may be charged to the defendant in a speedy trial analysis. *Id.* at 92-93. In *Brillon*, the defendant deliberately delayed his own trial by forcing the withdrawal of two out of six of his attorneys by attempting to fire one in the middle of a hearing and by threatening the life of another. *Id.* at 86-87, 94. Under these circumstances, the *Brillon* Court concluded that the defendant caused most of the delay in his case and held, "Just as a State's deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the State, so too should a defendant's deliberate attempt to disrupt proceedings be weighted heavily against the defendant." *Id.* at 93-94 (text only) (citation omitted).

**{67}** Under this rationale, in *Serros* we analyzed whether delays caused by the defendant seeking new counsel weighed against the defendant in that case. 2016-NMSC-008, ¶ 47. We acknowledged that the inquiry "effectively pits [a d]efendant's right to a speedy trial against his right to effective assistance of counsel, and he should not have to surrender one right to assert the other." *Id.* Thus, we concluded that we could only weigh the delay associated with the defendant's request for new counsel against him if "his assertion was unreasonable." *Id.* We held that the defendant's assertions were not unreasonable, unlike the defendant in *Brillon*, and did not weigh the delay against the defendant. *Id.* ¶¶ 55-56.

**{68}** We face a similar situation here, where Defendant's right to due process is pitted against his right to a speedy trial. Accordingly, we should only weigh delays resulting from competency evaluations against Defendant if such delays were "unreasonable." *Id.* ¶ 56. It cannot be said that taking the time to determine Defendant's competence here was unreasonable or a tactic employed by Defendant to delay his trial. *See id.* This is demonstrated by the fact that both parties requested inquiries into Defendant's

competence. The record does not support, nor does the State contend, that Defendant himself deliberately sought competency evaluations to delay his own trial.

**{69}** Thus, we would weigh the periods of delay attributable to Defendant's competency evaluations in this case neutrally absent evidence that Defendant unreasonably sought competency evaluations to delay his trial. To hold otherwise is unconstitutional.

**C.      November 3, 2010, to February 22, 2011**

**{70}** The district court found Defendant incompetent to stand trial and ordered him to be transported to the New Mexico Behavioral Health Institute ("NMBHI") for treatment on November 3, 2010. By February 21, 2011, Defendant still had not been transported to NMBHI, prompting him to file a motion to show cause for this delay. Defendant was transported to NMBHI on the following day, February 22, 2011. The Court of Appeals weighed this delay of three months and nineteen days against the State as administrative delay. *Gurule*, A-1-CA-35724, mem. op. ¶ 8. We agree with the Court of Appeals' holding regarding this period of delay, and it is uncontested by either party. Nonetheless, the majority departs from the Court of Appeal's analysis and holds this period of delay against Defendant because it relates to a competency evaluation. *Maj. op.* ¶ 31. We disagree that the delay in Defendant's transport to NMBHI due to a lack of beds can be weighed against Defendant. Moreover, Defendant's filing of the motion to show cause indicates that Defendant sought swift transport to NMBHI and in no way contributed or acquiesced to this delay. Additionally, Defendant was detained during this time, and there is no argument that detention was in any way beneficial to Defendant. We reiterate that it is the state's obligation to bring a defendant to trial in a timely manner, and when it fails to do so, such delay should weigh against the state. *See Serros,* 2016-NMSC-008, ¶ 38 ("[W]hen the delay is extraordinary and the defendant is detained . . . it may be appropriate to shift the focus to the State's efforts to bring the case to trial, at least when the record demonstrates that the defendant did not affirmatively cause or consent to the delay.").

**D.      February 22, 2011, to December 6, 2011**

**{71}** An examiner at NMBHI submitted a report on August 2, 2011, indicating that Defendant was competent to stand trial. On August 9, 2011, the district court scheduled a competency hearing for August 23, 2011. Defendant requested an evidentiary hearing regarding his competence on August 17, 2011, which prompted the district court to vacate the August 23, 2011, competency hearing and reschedule the hearing for October 11, 2011. The State filed motions for an "order requiring disclosure and protecting the privacy of records and other health information" and requested a hearing on the motions. Additionally, Defendant filed a stipulated motion for continuance from the October 11, 2021, competency hearing because defense counsel had plans to be out of state. The district court rescheduled the hearing to December 6, 2011. The Court of Appeals weighed this period of delay of nine months and fourteen days against Defendant because the delay related to Defendant's competency evaluation. *Gurule*, A-1-CA-35724, mem. op. ¶ 10.

**{72}** Defendant contests this holding in relation to the period of delay between February 22, 2011, and August 23, 2011, during which he was at NMBHI until the original competency hearing was set. He argues that this period of delay, totaling one hundred eighty-two days, should bear neutral weight. The majority seemingly affirmed the Court of Appeals as it did not address this period of delay. We would weigh this period neutrally, in accordance with the analysis above addressing delays resulting from competency evaluations.

**{73}** Defendant agrees that the delay attributable to the delay he requested, from August 23, 2011, to December 6, 2011, should weigh against him. Accordingly, defense counsel's requested continuance, approximately three months, to accommodate his travel plans should be weighed against Defendant. We agree.

### E.      December 6, 2011, to July 24, 2012

**{74}** The Court of Appeals weighed the seven months and eighteen days from December 6, 2011, to July 24, 2012, against the State due to the "absence of evidence in the record demonstrating the reasons the district court vacated the December 6, 2011, competency hearing." *Gurule*, A-1-CA-35724, mem. op. ¶ 10. The State contests this holding, stating, "[t]here was evidence in the record," including a "stipulated motion to send Defendant for his second evaluation at NMBHI," which included information that "Judge Candelaria had retired and the parties had to wait until a new judge was appointed." The State also provides that "[e]ven after the new judge was appointed, Defendant represented he was still in the process of getting a third competency evaluation, which he stated he was seeking on August 16, 2011[,] after NMBHI determined he was competent." Thus, the State argues that this time should weigh against Defendant as time spent ascertaining his competence.

**{75}** The State filed a stipulated motion on July 2, 2012, to send Defendant to NMBHI for another competency evaluation. The district court granted the stipulated motion on July 5, 2012. The competency hearing was set for July 24, 2012. The majority weighed this period of delay against Defendant. *Maj. op.* ¶ 32. Absent evidence that Defendant was leveraging a third competency evaluation to delay his trial, and because both parties sought to determine Defendant's competence throughout this timeframe, we would weigh this period of seven months and eighteen days neutrally.

### F.      July 24, 2012, to September 18, 2012

**{76}** The district court granted the State's stipulated motion for the court to continue the July 24, 2012, competency hearing "to a later date when . . . Defendant has been returned from NMBHI and another evaluation has been completed." Defendant was not transported to NMBHI until September 18, 2012. As a result, the Court of Appeals weighed this period of one month and twenty-five days against the State as administrative delay. *Gurule*, A-1-CA-35724, mem. op. ¶ 11. The majority disagrees with this analysis and weighs this period of delay against Defendant. This conclusion is beyond the pale. We would affirm the Court of Appeals' analysis, as the State bears the burden of explaining pretrial delay and offered no explanation for this delay.

## G.    September 18, 2012, to January 28, 2013

**{77}**    Another evaluator from NMBHI found Defendant competent to stand trial, and the district court scheduled a competency hearing for January 28, 2013. We agree with the Court of Appeals' determination that this period of four months and ten days should be weighed neutrally. *Gurule*, A-1-CA-35724, mem. op. ¶ 13. The majority seemingly affirms the Court of Appeals, although it weighs other delays attributable to Defendant's competency evaluations against Defendant. It is unclear why this inconsistency exists because the majority does not engage in a thorough analysis of each period of delay. The district court, not either of the parties, scheduled the competency hearing related to this period of delay. However, under the majority's rationale, delays relating to ascertaining a defendant's competence are always on behalf of the defendant, regardless of who initiates an evaluation or hearing. Thus, this conclusion is directly contradictory to the majority's principal basis for holding that Defendant's speedy trial rights were not violated here.

## H.    January 28, 2013, to May 22, 2013

**{78}**    On January 22, 2013, the State filed a stipulated motion to continue the January 28, 2013, competency hearing, citing both parties' need for more time to prepare. In its motion, the State also explained that Defendant did not respond to the State's request for information until January 18, 2013. Thus, the Court of Appeals weighed this period of three months and twenty-four days neutrally "as it was the result of both parties' need for additional time to prepare, as well as defense counsel's failure to respond to the State's request for information." *Gurule*, A-1-CA-35724, mem. op. ¶ 13. This timeframe went unaddressed by the majority, so we assume it affirms the Court of Appeals. We agree with this conclusion.

## I.    May 22, 2013, to June 26, 2013

**{79}**    The district court rescheduled the competency hearing set to take place on May 22, 2013, to June 26, 2013, because the New Mexico Department of Health objected to the State's subpoenas, contending they were issued too close to the scheduled competency hearing and many witnesses could not attend. We agree with the Court of Appeals' determination that this period of one month and four days should be weighed against the State as negligent or administrative delay. *Gurule*, A-1-CA-35724, mem. op. ¶ 14; *see Garza*, 2009-NMSC-038, ¶ 26 (weighing "negligent or administrative delay" against the state). The majority does not address this timeframe, so we assume it affirms the Court of Appeals.

## J.    June 26, 2013, to December 2, 2013

**{80}**    The district court found Defendant competent to stand trial following the June 26, 2013, competency hearing and scheduled the trial to begin on December 2, 2013. Absent any argument that this delay is attributable to either party, the Court of Appeals weighed this period of five months and six days neutrally. *Gurule*, A-1-CA-35724, mem.

op. ¶ 14. The majority does not address this timeframe, so we assume it affirms the Court of Appeals. We would do the same.

## K.    July 7, 2014, to October 20, 2014

**{81}**    The State filed another stipulated motion to continue the trial setting, and the district court rescheduled the trial to begin on October 20, 2014. In its motion, the State explained that it needed more time to conduct pretrial interviews and resolve discovery issues. Consequently, we agree with the Court of Appeals' determination that this delay of three months and thirteen days weighs against the State. *Gurule*, A-1-CA-35724, mem. op. ¶ 15. The majority seemingly affirms this holding as it does not address this timeframe.

## L.    December 2, 2013, to July 7, 2014

**{82}**    The State filed a stipulated motion to continue the December 2, 2013, trial for the purpose of pursuing a plea deal. The Court of Appeals weighed this delay of seven months and five days against the State. *Gurule*, A-1-CA-35724, mem. op. ¶ 15. In support of this finding, the Court of Appeals cited *State v. Samora*, 2016-NMSC-031, ¶ 13, 387 P.3d 230, which provides that "it is well settled that the possibility of a plea agreement does not relieve the State of its duty to pursue a timely disposition of the case" (internal quotation marks and citation omitted). Further, *Samora* weighed the period of delay caused by the parties' pursuit of a plea deal against the state. *Id.*

**{83}**    We agree with the Court of Appeals' determination relating to this timeframe. Even if pursuing a plea was in both parties' best interests, the State was not relieved of its duty to keep the case moving towards trial. *See id.* The majority does not address this timeframe and thus seemingly affirms this holding.

## M.    October 20, 2014, to November 17, 2014

**{84}**    Defendant filed a motion to continue the October 20, 2014, trial setting on September 8, 2014. Defendant cited defense counsel's schedule and the need for additional time to interview witnesses and resolve discovery disputes as his reasons for doing so. The district court granted the motion over the State's objection, and the trial was rescheduled for November 17, 2014. We agree with the Court of Appeals' determination that this period of twenty-eight days weighs against Defendant because defense counsel requested this delay. *Gurule*, A-1-CA-35724, mem. op. ¶ 16 (citing *State v. Deans*, 2019-NMCA-015, ¶ 10, 435 P.3d 1280 ("[A]ny delay caused by the defendant generally weighs against the defendant.")). The majority does not address this timeframe, and thus we assume it affirms this holding.

## N.    November 17, 2014, to February 2, 2015

**{85}**    Defense counsel filed another motion for continuance from the scheduled November 17, 2014, trial, citing the need for more time for expert preparation, more

time to explain the State's plea to Defendant, and a change in defense counsel. The district court scheduled the trial for February 2, 2015. The Court of Appeals weighed this period of two months and sixteen days against Defendant. *Gurule*, A-1-CA-35724, mem. op. ¶ 16. The majority does not address this timeframe and thus seemingly affirms this holding. We would do the same.

## O.    February 2, 2015, to February 8, 2016

{86}    The district court vacated the February 2, 2015, trial setting and scheduled trial for February 8, 2016, as a result of "a congested court docket" and "the impending imposition of LR2-400" NMRA (subsequently amended and recompiled as LR2-308 NMRA). We agree with the Court of Appeals' analysis, weighing this factor against the State. *Gurule*, A-1-CA-35724, mem. op. ¶ 17. In coming to this conclusion, the Court of Appeals cited *Garza*, 2009-NMSC-038, ¶ 29, which identified congested court dockets as negligent delay to be weighed against the State. The majority does not address this timeframe, and we again assume that it affirms the Court of Appeals.

## II.    THE STATE BEARS THE VAST MAJORITY OF RESPONSIBILITY FOR THE LENGTHY DELAY IN THIS CASE

{87}    In sum, we would weigh approximately thirty-four months neutrally, twenty-nine months against the State, and seven months against Defendant. While different from the exact categorizations by the Court of Appeals, this finding would fall in line with its conclusion that this factor weighs heavily against the State. *Gurule*, A-1-CA-35724, mem. op. ¶ 18. We also note that, even under the totals it reached, the majority offers no authority for *not* weighing the presumptively excessive twenty-four months against the State due to a larger number of months being attributed to Defendant—essentially counterbalancing the State's liability without providing a legal rationale for such a proposition. The analysis of how to assess each delay is not a balancing of whether the State or Defendant caused more delay. Instead, the analysis is whether the State caused delay of unconstitutional proportion. *See Barker*, 407 U.S. at 527 ("A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process." (footnote omitted)). There is no question that the time assessed against the State here is unconstitutional and violates Defendant's right to a speedy trial.

## III.    THE ASSERTION OF THE RIGHT FACTOR SHOULD WEIGH AGAINST THE STATE

{88}    The majority disagrees with the Court of Appeals' holding that the "assertion of the speedy trial right" factor should weigh against the State. *Maj. op.* ¶ 39. We would affirm the Court of Appeals' holding as to this factor. The majority's primary reasoning for its holding is that because Defendant "acquiesced to several of the State's continuances and moved for his own continuances," this factor should weigh against him. *Maj. op.* ¶ 39. The majority relied on *Serros* for the proposition that we "'first consider whether [the d]efendant is to blame for the delays . . . because he has

personally caused or acquiesced to the delay in his case.'" *Maj. op.* ¶ 37 (alteration and omission in original) (quoting *Serros*, 2016-NMSC-008, ¶ 43).

**{89}** The Court of Appeals acknowledged that this factor should only weigh slightly in Defendant's favor. *Gurule*, A-1-CA-35724, mem. op. ¶ 20. Defendant asserted his right to a speedy trial on five different occasions. *Id.* He first asserted his right to a speedy trial as part of an entry of appearance on April 16, 2010. *Id.* Next, Defendant asserted his right on May 26, 2010, as a part of defense counsel's entry of appearance in district court. *Id.* Defendant asserted his right a third time on January 22, 2015, again in conjunction with defense counsel's entry of appearance. *Id.* The Court of Appeals gave these three assertions little weight, citing *State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061, for the proposition that "[s]uch pro forma motions are generally afforded relatively little weight in this analysis." Defendant's fourth and final assertions were filed on October 5, 2015, and February 4, 2016. *Gurule*, A-1-CA-35724, mem. op. ¶ 20. The majority also based its conclusion partially on the fact that Defendant's assertions of the right were pro forma. *Maj. op.* ¶ 39.

**{90}** We disagree that *Urban* compels us to weigh this factor against Defendant. Our jurisprudence requires us to consider all of the circumstances surrounding the case before determining whether a defendant's assertion of the right has been mitigated. *See State v. Ochoa*, 2017-NMSC-031, ¶ 42, 406 P.3d 505 ("In evaluating the [assertion of the right] factor, this Court has also noted the importance of closely examining the circumstances of each case."). In *Garza*, the defendant only asserted his right to a speedy trial once as part of his waiver of arraignment and plea of not guilty. 2009-NMSC-038, ¶ 4. We acknowledged, "[T]he timeliness and vigor with which the right is asserted may be considered as an indication of whether a defendant was denied needed access to speedy trial over his objection or whether the issue was raised on appeal as afterthought." *Id.* ¶ 32. We also emphasized the importance of analyzing the circumstances of each case. *Id.* ¶ 33. In doing so, we held that the defendant's seemingly pro forma singular assertion of his right was sufficient for this factor to weigh in his favor, partially because he did not directly cause or acquiesce to the delay in his case. *Id.* ¶ 34. Here, we cannot say that Defendant's five assertions of his right to a speedy trial were "raised on appeal as afterthought." *See id.* ¶ 32. Nor can we say that, under the circumstances, Defendant caused or acquiesced to most of the delay such that his five speedy trial right assertions are now void. While this Court's jurisprudence indicates that we may consider whether a defendant's assertions are pro forma, we disagree that this shifts the weight in favor of the state under the circumstances in this case. *See Ochoa*, 2017-NMSC-031, ¶ 41 ("The frequency and force of the objections can be taken into account in considering the defendant's assertion, as well as whether an assertion is purely pro forma.").

**{91}** We also question courts' continued reliance on *Urban* for the proposition that pro forma assertions of the right must be given slight weight. A defendant's manner in asserting a constitutional right should not be diminished based on the form used to assert the right. While asserting the right timely and with vigor may afford more weight to the defendant under this factor, the fact that a defendant made such assertion via an entry of appearance should not lessen its impact.

**{92}** Finally, the Court of Appeals acknowledged, "To the extent that [Defendant's] motions were efforts to expedite the time in which Defendant was brought to trial, . . . 'Defendant's assertions of the right were mitigated by his acquiescence to, and responsibility for, numerous delays.'" *Gurule*, A-1-CA-35724, mem. op. ¶ 21 (quoting *Samora*, 2016-NMSC-031, ¶ 20). In our view, Defendant was not responsible for the vast majority of the delay in this case, but he did bear some responsibility for the delay. Moreover, Defendant asserted his right to a speedy trial five times. This leads to our conclusion that this factor should weigh against the State. Further, mitigating factors present sound reasoning for the Court of Appeals' conclusion that the weight is slight. Accordingly, we respectfully disagree with the majority that this factor should weigh in the State's favor.

## IV. THE EXTRAORDINARY DELAY IN THIS MATTER PREJUDICED DEFENDANT

**{93}** The majority contends that the prejudice factor weighs against Defendant. We disagree with this analysis, as it is contrary to our own jurisprudence. We therefore would affirm the Court of Appeals' holding that Defendant suffered prejudice as a result of the lengthy pretrial incarceration he endured.

**{94}** This Court acknowledged in *Garza* that, "if the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated." *Garza*, 2009-NMSC-038, ¶ 39. It follows that "[a]lthough a defendant bears the burden of proving prejudice, this burden varies with the length of pretrial incarceration." *Ochoa*, 2017-NMSC-031, ¶ 52. "Thus, the length of incarceration is a counterweight to a defendant's burden of production." *Id.* ¶ 54. Therefore, the Court of Appeals held that "[a]s Defendant was incarcerated for over five years before he was brought to trial, we presume that he was prejudiced." *Gurule*, A-1-CA-35724, mem. op. ¶ 23.

**{95}** This holding falls in line with this Court's jurisprudence. This Court held in *Ochoa* that the defendant's two-year incarceration was presumptively prejudicial. 2017-NMSC-031, ¶ 57. We acknowledged "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* ¶ 56 (text only) (quoting *Doggett v. United States*, 505 U.S. 647, 655 (1992)). Further, we held that "[c]ontinuous pretrial incarceration is obviously oppressive to some degree, even in the absence of affirmative proof." *Ochoa*, 2017-NMSC-031, ¶ 57. Furthermore, this Court held in *Serros* that a period of four years of pretrial incarceration "is oppressive on its face." 2016-NMSC-008, ¶ 90. Over five years of incarceration well exceeds the lapses of time that were found to be presumptively prejudicial in *Ochoa* and *Serros*.

**{96}** It is also important to recognize that even though the *Serros* Court discussed the circumstances surrounding the defendant's incarceration, those circumstances ultimately were not a key factor in its finding of prejudice. The Court indicated this by stating that it "already [had] determined that the first three factors weigh heavily in [the

d]efendant's favor, and [it] therefore need not consider whether [the d]efendant has made a particularized showing of prejudice." *Serros*, 2016-NMSC-008, ¶ 87. In addition, the *Serros* Court only addressed the prejudice factor "to clarify what [it] view[ed] as a misapplication of the law by the Court of Appeals majority." *Id.*

**{97}** Finally, we agree with the Court of Appeals and would affirm its analysis of the prejudice factor in *State v. Brown*, 2017-NMCA-046, 396 P.3d 171. In *Brown*, the Court of Appeals determined that the defendant was "substantially prejudiced" by a pretrial incarceration period of thirty-three months. *Id.* ¶ 36. The state presented other mitigating factors, "including that [the d]efendant finished his high school education, did not suffer reported incidents of violence, and did not receive any behavioral misconduct violations while incarcerated." *Id.* However, the *Brown* Court determined those factors "d[id] not sufficiently affect the degree of prejudice suffered as a result of [the d]efendant's extended pretrial incarceration." *Id.* It reasoned that "[b]ecause [the d]efendant need not prove both undue pretrial incarceration and undue anxiety suffered, but may prove either, a determination of substantial prejudice arising from undue pretrial incarceration is justified in this case." *Id.*

**{98}** Thus, under *Brown*, because the length of delay here was extraordinary, and because the reasons for delay weigh in Defendant's favor, the delay in this case is presumptively prejudicial, and it is not necessary for Defendant to prove he suffered undue anxiety. *See id.*; *see also State v. Spearman*, 2012-NMSC-023, ¶ 36, 283 P.3d 272 ("'[W]e weigh this factor in the defendant's favor . . . where the pretrial incarceration *or* the anxiety suffered is undue.'" (second alteration in original) (quoting *Garza*, 2009-NMSC-038, ¶ 35)). This analysis would lead to the same conclusion as the Court of Appeals that "[a]lthough we acknowledge that Defendant's initial and continued placement in segregation was the result of his conduct while in custody, we cannot ignore the oppressive impact the conditions and duration of his incarceration had on Defendant." *Gurule*, A-1-CA-35724, mem. op. ¶ 29. We further agree with the Court of Appeals' conclusion that "Defendant's motions for continuances . . . resulted in only a minor delay in his pretrial incarceration. We therefore conclude that Defendant suffered extreme prejudice." *Id.*

## V.    CONCLUSION

**{99}** We would hold that all four *Barker* factors weigh against the State, thus, Defendant's speedy trial rights were violated. Our main disagreements with the majority are its weighing of periods of delay related to competency evaluations against Defendant and its finding that Defendant suffered no prejudice as a result of almost six years of pretrial incarceration. For these reasons, we respectfully dissent.

**C. SHANNON BACON, Chief Justice**

**I CONCUR:**

**MICHAEL E. VIGIL, Justice**

**Months of Delay Weighed Against the Parties and Neutrally, in Three Courts**

| | State | Neutrally | Defendant |
|---|---|---|---|
| **District Court** | 33 months | 20 months | 16 months |
| **Court of Appeals** | 37 months | 20 months | 13 months |
| **Supreme Court** | 37 months<br><br>-3 months, 19 days<br><br>-7 months, 18 days<br><br>-1 month, 25 days<br><br>=<br><br>37 months<br><br>-11months, 62 days<br><br>=<br><br>37 months<br><br>-13 months | 20 months | 13 months<br><br>+3 months, 19 days<br><br>+7 months, 18 days<br><br>+1 month, 25 days<br><br>=<br><br>13 months<br><br>+11 months, 62 days<br><br>=<br><br>13 months<br><br>+13 months |

| | = | = | = |
|---|---|---|---|
| | **24 months** | **20 months** | **26 months** |

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**December 12, 2024**

**No. S-1-SC-37879**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**JEREMIAH JOHN GURULE,**

Defendant-Respondent.

## ORDER

**THOMSON, Chief Justice.**

**{100}** WHEREAS, this matter came on for consideration by the Court upon Defendant's motion for rehearing and brief in support filed pursuant to Rule 12-404 NMRA, requesting reconsideration of the Court's opinion in *State v. Gurule*, 2025-NMSC-010, 536 P.3d 775;

**{101}** WHEREAS, a motion for rehearing "shall state briefly and with particularity, but without argument, the points of law or fact which in the opinion of the movant the court has *overlooked or misapprehended*," Rule 12-404(A) (emphasis added);

**{102}** WHEREAS, as grounds for his motion, Defendant's primary argument appears to be that the Court *sua sponte* raised and decided issues regarding the weight of the speedy trial factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972);

**{103}** WHEREAS, while this Court gives "deference to the district court's factual findings, . . . we review the *weighing and the balancing* of the *Barker* factors de novo," *State v. Spearman*, 2012-NMSC-023, ¶ 19, 283 P. 3d 272 (alterations, internal quotation marks, and citation omitted) (emphasis added);

**{104}** WHEREAS, this de novo review compels the Court to conduct an ad hoc review of all the *Barker* factors, including prejudice, *State v. Ochoa*, 2017-NMSC-031, ¶¶ 4-5, 406 P.3d 505;

**{105}** WHEREAS, Defendant's remaining arguments raise new issues not initially raised in his briefing or that lack merit;

**{106}** WHEREAS, absent fundamental error, "new points may not be [raised] in a [motion] for rehearing," *see State v. Curlee*, 1982-NMCA-126, ¶ 14, 98 N.M. 576, 651 P.2d 111 (citing cases); *Wilson v. Rowan Drilling Co.*, 1950-NMSC-046, ¶ 79, 55 N.M. 81, 227 P.2d 365 (motion for rehearing) (noting fundamental error exception), and the general rule remains that rehearing is limited to "the points of law or fact which . . . the court has overlooked or misapprehended," Rule 12-404(A);

**{107}** WHEREAS, the analysis set forth by the majority in *Gurule*, 2025-NMSC-010, was thorough, well-reasoned, and addresses all of the points raised in the motion for rehearing and in the dissenting opinion;

**{108}** WHEREAS, the Court having considered the foregoing and being sufficiently advised, Chief Justice David K. Thomson, Judge Dustin K. Hunter, sitting by designation, and Judge Amanda Sanchez Villalobos, sitting by designation, concurring; Justice Michael E. Vigil, and Justice C. Shannon Bacon dissenting;

**{109}** NOW, THEREFORE, IT IS ORDERED that the motion is DENIED.

**{110} IT IS SO ORDERED.**

**DAVID K. THOMSON, Chief Justice**

**WE CONCUR:**

**DUSTIN K. HUNTER, Judge**
**Sitting by designation**

**AMANDA SANCHEZ VILLALOBOS, Judge**
**Sitting by designation**

**MICHAEL E. VIGIL, Justice, concurring in dissent**

**C. SHANNON BACON, Justice, dissenting**

**BACON, Justice (dissenting).**

**{111}** Defendant Jeremiah Gurule's Motion for Rehearing (Motion) and Brief in Support of Rehearing (Brief) abide with the requirements of Rule 12-404 NMRA. ("The motion shall state briefly and with particularity, but without argument, the points of law or fact which in the opinion of the movant the court has overlooked or misapprehended. If the

motion is based on a point of law or fact not raised, briefed, or argued by any party but relied on by the court in its disposition of the matter, the motion shall specifically so state, and shall be accompanied by a brief in support thereof."). As we discuss, the Motion directs the Court's attention to the rule-announced "points of law . . . overlooked or misapprehended" by the majority's recent filing in *State v. Gurule*, 2025-NMSC-010, 536 P.3d 775.

**{112}** The Motion is well-taken and should be granted in order for the majority, at a minimum, to correct its reliance on mischaracterizations of *State v. Serros*, 2016-NMSC-008, 366 P.3d 1121, and *State v. Mendoza*, 1989-NMSC-032, 108 N.M. 446, 774 P.2d 440, and to retract its citation of *United States v. McGhee*, 532 F.3d 733 (8th Cir. 2008), regarding negation of actual prejudice. The nature of these errors reflects misapprehensions of law. Defendant's well-founded and measured Brief additionally directs this Court's attention to four flawed propositions that are reasonably inferred from *Gurule* as precedential for New Mexico's speedy trial jurisprudence:

- No amount of [negligent or] administrative delay during competency proceedings can ever weigh against the State.

- If there is extended delay due to competency proceedings, a court may ignore subsequent [negligent or] administrative delay, even if it would weigh against the State.

- Long pretrial incarceration does not prejudice a defendant [as a matter of law].

- Oppressive pretrial conditions are not prejudicial when the defendant is confined because he poses a risk to the safety of others [as a matter of law].

We share Defendant's concerns that the majority has overlooked these propositions. Defendant proposes, in the alternative, apart from adopting the dissent in *Gurule*, 2025-NMSC-010, ¶¶ 58-99 (Bacon, C.J., dissenting), as the opinion of this Court, that "[i]f the majority did not intend to establish these principles," the Court should "depublish" the opinion under Rule 12-405(C) and amend the prejudice analysis.

**{113}** Rehearing this case—including as to issues reached by *Gurule* sua sponte— would allow this Court to correct its jurisprudence as to the overlooked and misapprehended points of law raised by the Motion. Because the majority elects instead to deny the Motion, we dissent from that denial. In this posture, we restrict our focus to addressing the serious concerns raised in the Brief and explaining how the flawed propositions highlighted by the Motion are supported by *Gurule* but are contrary to or lack adequate support from our caselaw.

## I.   CONCERNS RAISED IN THE BRIEF REGARDING THE "REASON FOR DELAY" FACTOR IN THE *BARKER* ANALYSIS

**{114}** Defendant highlights the following two flawed propositions inferred from *Gurule*:

- No amount of [negligent or] administrative delay during competency proceedings can ever weigh against the State.

- If there is extended delay due to competency proceedings, a court may ignore subsequent [negligent or] administrative delay, even if it would weigh against the State.

that relate to the "reason for delay" factor in analysis under *Barker v. Wingo*, 407 U.S. 514 (1972). *See State v. Ochoa*, 2017-NMSC-031, ¶ 4, 406 P.3d 505 (listing the four *Barker* factors: "the length of delay, the reason for delay, the defendant's assertion of the right to a speedy trial, and the prejudice to the defendant"); *State v. Garza*, 2009-NMSC-038, ¶¶ 25-27,  146 N.M. 499, 212 P.3d 387 (differentiating three reasons for delay: the government's "intentional delay," its "negligent or administrative delay," and its delay for "a valid reason"). As we discuss, these flawed propositions are reasonable inferences from *Gurule*'s discussion of the reason-for-delay factor, but, critically, that discussion relies on two misstatements of our caselaw.

**{115}** First, *Gurule*'s discussion of the reason-for-delay factor relies on a mischaracterization of what *Serros* presented as a rule of speedy trial jurisprudence, on which purported rule *Gurule* then relies for subsequent conclusions. *Gurule* states that "[i]n cases where a defendant causes or *benefits from the delay*, the time weighs against the defendant." *Gurule*, 2025-NMSC-010, ¶ 24, (emphasis added) (citing *Serros*, 2016-NMSC-008, ¶ 43). In actuality, *Serros* considered whether a defendant "has personally caused or *acquiesced to the delay* in his case," thereby rendering the defendant "to blame for the delays." 2016-NMSC-008, ¶ 43 (emphasis added). The *Serros* Court adopted this analysis from *State v. Stock* as step one of two steps for analyzing the reason-for-delay factor. *See* 2016-NMSC-008, ¶¶ 35-37, 43 ("If not, then we consider whether the State has met its obligation to bring [the d]efendant's case to trial." (citing *State v. Stock*, 2006-NMCA-140, ¶¶ 19-25, 140 N.M. 676, 147 P.3d 885)).

**{116}** The distinction between "benefits from" and "acquiesced to" is meaningful. A defendant's *acquiescence* to delay indicates that a defendant knew of and accepted that delay, whereas a defendant may *benefit from* a delay even if, as in *Stock*, the defendant did not consent to that delay or if, as in *Serros*, the defendant only found out about extensions after they had been granted. Despite the defendants in *Stock* and *Serros* benefitting from relevant delays, our courts held in both cases that the defendants' speedy trial rights were violated, in significant part because neither defendant caused or acquiesced to those delays. Thus, our caselaw supports that *Gurule*'s representation of *Serros* regarding "benefits from" is a misapprehension of the law. As *Barker* recognized, the speedy trial right is unique in that its violation may sometimes benefit a defendant regardless of whether the defendant was responsible for relevant delay. *See* 407 U.S. at 519 ("[T]here is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused . . . [and], among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system.").

**{117}** Mischaracterization of *Serros* sets the foundation for *Gurule*'s assertion that even negligent or administrative delay is chargeable to the defendant in the competency context because it purportedly benefits a defendant.

**{118}** Second, *Gurule* also misstates *Mendoza*, suggesting that its holding, that competency proceedings are "'for the benefit of the defendant'" and thus "'chargeable to the defendant,'" contemplated even negligent or administrative delay. *Gurule*, 2025-NMSC-010, ¶ 28 (quoting *Mendoza*, 1989-NMSC-032, ¶ 9). This, too, is a misapprehension of law. From this blanket reading, *Gurule* then asserts that the Court of Appeals' approach was "contrary to *Mendoza*" in parsing and charging to the State "periods of procedural delay . . . from within the larger category of delay for competency determinations." *Gurule*, 2025-NMSC-010, ¶ 28.

**{119}** In actuality, the facts presented in *Mendoza* did not include negligent or administrative delay, and none of the cases cited in *Mendoza*'s relevant discussion involved such delay. *See generally Mendoza*, 1989-NMSC-032 (determining whether a finding of competency rather than incompetency invoked tolling under the six-month speedy trial rule, which rule was eliminated by the 2011 amendments to Rule 5-604 NMRA); *id.* ¶ 8 (citing, e.g., *Jones v. People*, 711 P.2d 1270, 1281 (Colo. 1986) ("The time necessary to complete the examination was thus properly chargeable to the defendant." (emphasis added))). Further, a careful reading does not support that *Mendoza* contemplated exclusion from speedy trial analysis of periods of time beyond those directly related or necessary to making a competency determination. *See* 1989-NMSC-032, ¶ 8 ("The period of time to make this [competency] determination must be excluded from determination of the period for commencement of trial. . . . During the time an accused's competency is being assessed, he or she is unavailable for trial.").

**{120}** Nonetheless, *Gurule* attempts to invoke support for its reading of *Mendoza* from "other jurisdictions' recognition that 'a defendant may not complain of delays occasioned by the trial court's attempt to protect his interests.'" *Gurule*, 2025-NMSC-010, ¶ 27 (quoting *United States v. Murphy*, 241 F.3d 447, 454 (6th Cir. 2001)). Importantly, however, cases cited by *Gurule* (1) considered delays related to competency determination or treatment but not negligent or administrative delays, and (2) involved federal courts applying the federal Speedy Trial Act, 18 U.S.C. § 3161 (2008). Regardless of whether Defendant's claim arises under the Sixth Amendment to the United States Constitution or Article II, Section 14 of the New Mexico Constitution, *see Gurule*, 2025-NMSC-010, ¶ 3 & n.2, application of federal cases interpreting a federal statute to our interpretation of a fundamental constitutional right is specious, *see Mendoza*, 1989-NMSC-032, ¶ 17 (Sosa, C.J., dissenting) (adopting and appending in full the Court of Appeals' majority opinion ("Federal courts interpreting the analogous federal Speedy Trial Act have held that the sixth amendment constitutional claim and the statutory speedy trial claim receive separate review. . . . Violation of the Speedy Trial Act is not synonymous with a sixth amendment violation.")). We also note with concern that *Gurule* cites two of these cases for the proposition that the reason for delay *need not be reasonable*, a notion well established under federal Speedy Trial Act caselaw but without a home in constitutional speedy trial jurisprudence. *See Doggett v. United States*, 505 U.S. 647, 654 (1992) (observing in speedy trial cases that

"unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired" (text only)[7] (citation omitted)).

**{121}** Because *Mendoza* did not involve negligent or administrative delay, *Gurule*'s characterization of the holding there asserts an unsupported and novel proposition, i.e. misapprehends the law. By shoehorning negligent or administrative delay into the scope of *Mendoza*'s holding, *Gurule* implicitly asserts that, once questions of competency have been raised, all delay should be viewed as beneficial and chargeable to the defendant, even if that delay consists entirely of the defendant sitting in a cell for months awaiting transition to a competency evaluation. Credulity is strained imagining how such delay could be beneficial to anyone's interests or why the State should be excused from its responsibility to achieve a speedy trial. *See Barker*, 407 U.S. at 527 ("[S]ociety has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest."). Since the State controls the conditions for eliminating such unnecessary delay, weighing that delay neutrally or against the defendant is illogical and makes a mockery of the State's "obligation to monitor and move the case forward." *Serros*, 2016-NMSC-008, ¶ 41.

**{122}** For these reasons, we agree with Defendant that this case should be reheard as to the reason-for-delay factor, if only to amend *Gurule*'s representations of *Serros* and *Mendoza* suggesting, "No amount of administrative delay during competency proceedings can ever weigh against the State." As Defendant argues, "This kind of delay is both unlawful and wholly outside the control of a defendant," and *Gurule*'s "holding creates no incentive for the State to ensure that the evaluation moves forward quickly."

**{123}** Finally, even under *Gurule*'s calculations, we share Defendant's concern that *Gurule*'s ultimate weighing of the reason-for-delay factor can be read as ignoring the twenty-four months of State-caused delay. *See Gurule*, 2025-NMSC-010, ¶ 87, (Bacon, C.J., dissenting) ("The analysis of how to assess [this factor] is not a balancing of whether the State or Defendant caused more delay. Instead, the analysis is whether the State caused delay of unconstitutional proportion."). Defendant's cited precedent supports that twenty-four months of administrative delay should weigh heavily against the State, especially occurring *years* into an already-delayed case. *See Serros*, 2016-NMSC-008, ¶ 29 ("As the length of delay increases, negligent or administrative delay weighs more heavily against the State."). As currently presented, *Gurule* overlooks this important point of law, thereby implicating the second flawed proposition highlighted by Defendant, that subsequent negligent or administrative delay may be ignored because of previous, lengthy delay due to competency proceedings.

---

[7]The "(text only)" parenthetical indicates the omission of nonessential punctuation including internal quotation marks, ellipses, and brackets that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

## II.  CONCERNS RAISED IN THE BRIEF REGARDING THE "PREJUDICE" FACTOR IN THE *BARKER* ANALYSIS

**{124}** Defendant also highlights the following two flawed propositions from *Gurule* relating to "prejudice," the fourth factor in the *Barker* analysis:

- Long pretrial incarceration does not prejudice a defendant [as a matter of law].

- Oppressive pretrial conditions are not prejudicial when the defendant is confined because he poses a risk to the safety of others [as a matter of law].

As we discuss next, these flawed propositions are reasonable inferences from *Gurule*'s discussion of the actual prejudice factor, and both stem from suspect and unsupported reasoning in *McGhee*. We deem *McGhee*'s negation of actual prejudice to be an improper premise that is dismissive of a fundamental constitutional right, and therefore *McGhee* constitutes an unsound foundation for *Gurule*'s prejudice analysis. Metaphorically, *McGhee*'s rationale regarding prejudice is a poisonous seed that should not be planted in New Mexico's jurisprudence. Stated differently, incorporation of *McGhee* clearly reflects misapprehension of the law.

### A.  *McGhee*'s Negation-of-Prejudice Rationale Is an Unsupported Proposition That Has Not Been Followed As Applied in *Gurule*

**{125}** In *McGhee*, the Eighth Circuit explained its finding of no actual prejudice as follows:

> Here, McGhee does not point to any actual prejudice in the delay. Although incarcerated before trial, he was incarcerated only because the magistrate judge revoked his release after failing a drug test and lying under oath. Any prejudice from pretrial incarceration was attributable to McGhee's own acts.

*Id.* at 740. Unsupported by any authority, this cursory rationale appears to be rooted in a *he deserves it, so it doesn't count* principle that has no basis in the actual prejudice analysis of *Barker* or its progeny. To the contrary, the *Barker* line recognizes that some degree of prejudice occurs from pretrial incarceration without regard to the defendant's level of blame or culpability in that incarceration. *See Barker*, 407 U.S. at 532-33 ("The time spent in jail is simply dead time."); *Doggett*, 505 U.S. at 651 (characterizing the fourth factor without qualification as "whether he suffered prejudice as the delay's result"); *Moore v. Arizona*, 414 U.S. 25, 27 (1973) (per curiam) ("Inordinate delay, wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and may disrupt his employment, drain his financial resources, curtail his associations, subject him to public

obloquy, and create anxiety in him, his family and his friends." (text only) (citation omitted)).

**{126}** Under the unsupported rationale of *McGhee*, any defendant incarcerated for a past or noncompliant act or for violating any condition of release is effectively precluded from relief despite the speedy trial right being a fundamental constitutional protection. *See Moore*, 414 U.S. at 27-28 ("[T]he right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment."); *Klopfer v. State of North Carolina*, 386 U.S. 213, 226 (1967) ("The history of the right to a speedy trial and its reception in this country clearly establish that it is one of the most basic rights preserved by our Constitution."). Accordingly, we share Defendant's concern that adoption of *McGhee* in this context "will make it very difficult for defendants incarcerated under Rule 5-409 [NMRA (pretrial detention)] or Rule 5-403 [NMRA (conditions of release)] to make a showing of speedy trial prejudice, even if they are incarcerated for many years before trial under terrible conditions." Given that a defendant can be incarcerated for drinking a beer or failing a drug test in violation of conditions of release—in other words, incarceration attributable to their own acts—this begs the question, which defendants would ever be granted speedy trial relief under *McGhee*'s negation-of-prejudice rationale? Such reasoning is analogous to an emergency room patient enduring long delay for treatment only to be told that self-inflicted wounds don't deserve medical attention.

**{127}** We reiterate that precedent does not support courts assessing blame for the fourth *Barker* factor. Presumably, overlooked by the majority, the *McGhee* Court imported this approach from the reason-for-delay factor, without authority. Regardless, it is notable that the only jurisdiction to adopt this reasoning from *McGhee* has done so with limitation: Maine has twice cited this negation-of-prejudice proposition, but only regarding defendants' incarceration from bail violations *arising in other cases*. *See State v. Norris*, 2023 ME 60, ¶ 29 ("Several of those [eighteen] months [of pretrial incarceration], however, can be attributed to a revocation of Norris's bail after he was arrested for an unrelated crime."); *Winchester v. State*, 2023 ME 23, ¶ 57 ("[M]uch of Winchester's pretrial incarceration during the relevant period was due to his being held without bail in [a separate] case."); *id.* (citing *McGhee* for the "proposition that the accused's incarceration due to a bail violation negates any claim of prejudice due to incarceration in the context of a speedy trial claim"); *id.* ¶ 3 (specifying that the defendant's "bail had been revoked in [that separate] case"). Without more, *McGhee* does not present a sound proposition for speedy trial jurisprudence, and Defendant's Motion should be granted to remove *McGhee* from New Mexico law.

**{128}** Further, *Gurule* actually extends this rationale, raising additional concerns as to the ripple effects if *McGhee*'s radical proposition becomes New Mexico law. By stating that "Defendant's own behavior was to blame for the restrictions he faced in segregation," *Gurule* holds an incompetent defendant to task for his related conduct. *Gurule*, 2025-NMSC-010, ¶ 45 ("Defendant had more control than the defendant in [*State v. Fierro*, 2012-NMCA-054, 278 P.3d 541] over whether he remained in segregation."). Despite relying on Defendant's incompetency in its reason-for-delay analysis, *Gurule* chooses to ignore that incompetency as relevant both to his "erratic

and violent behavior even as he was booked" and to his subsequent violent behavior resulting in segregation, thereby punishing an incompetent person for conduct he cannot control. *Gurule*, 2025-NMSC-010, ¶¶ 45-46. We note that while competency questions were raised in *McGhee*, those concerns were not germane to that court's negation-of-prejudice proposition regarding his failed drug test and lying under oath in the magistrate court.

## B. The District Court's Finding of No Particularized Prejudice Does Not Warrant Deference

**{129}** Beyond reliance on *McGhee*, *Gurule*'s prejudice analysis also importantly defers to the district court's factual finding "that Defendant did not demonstrate particularized prejudice due to his time spent in segregation." *Gurule*, 2025-NMSC-010, ¶ 45. Under this deference, *Gurule* accepts the district court's rejection of Defendant's affirmative showing "through an affidavit which detailed his daily routine in prison and his general state of being[,] . . . focus[ing] greatly on his placement in segregation." However, the district court's actual prejudice analysis suffers from three errors of law regarding oppressive pretrial incarceration that render its factual finding undeserving of any deference, adding to the reasons this Court should grant Defendant's Motion. The majority appears to completely overlook these three errors.

**{130}** First, similar to *McGhee*, the district court negated evidence of prejudice based on assessing Defendant was to blame for his solitary confinement. Without citing authority, the district court negated Defendant's affirmative showing in his affidavit, relying instead on law enforcement testimony that "his own actions . . . resulted in his continued placement in the segregated unit." *McGhee*'s negation-of-prejudice rationale was never cited in New Mexico precedent and thus was not New Mexico law at the time, and so the district court's negation was not a proper application of the law to the facts.

**{131}** Second, the district court applied *Garza* too narrowly, stating that "[t]ime alone is insufficient to . . . show prejudice from pretrial incarceration" of Defendant but ignoring the clear proposition in *Serros* and *Ochoa* that length of pretrial incarceration can establish oppressive pretrial incarceration without an affirmative showing of prejudicial effects. In *Serros*, regardless of the defendant's relevant testimony, we expressly held that the length of time, four years of pretrial incarceration, "is oppressive on its face." 2016-NMSC-008, ¶ 90; *see Ochoa*, 2017-NMSC-031, ¶ 54 (noting *Serros*'s "acknowledg[ment] that the defendant's testimony was not essential to our conclusion that he suffered oppressive pretrial incarceration"). Significantly, the holding in *Serros* regarding prejudice hinged merely on incarceration generally, whereas the defendant being "held *in segregation* for all of that time only compound[ed] the prejudicial effect of his excessive pretrial incarceration." *Serros*, 2016-NMSC-008, ¶ 90 (emphasis added).

**{132}** Similarly in *Ochoa*, we said that "a defendant need not always present affirmative proof in support of a prejudice claim." 2017-NMSC-031, ¶ 55 (citing *Garza*, 2009-NMSC-038, ¶ 39); *id.* ("*Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to

a speedy trial." (text only) (quoting *Moore*, 414 U.S. at 26)). The *Ochoa* Court reasoned that "lengthy and onerous pretrial incarceration may render affirmative proof unnecessary to find that the defendant suffered prejudice. . . . Thus, the length of incarceration is a counterweight to a defendant's burden of production." *Id.* ¶ 54. "Although a defendant bears the burden of proving prejudice, this burden varies with the length of pretrial incarceration," and the *Ochoa* Court implicitly concluded that this burden reduces to a nullity when the length of incarceration reaches a sufficient duration. *Id.* ¶ 52. This conclusion is evident in the *Ochoa* Court's assessment of the actual prejudice factor despite the absence of an affirmative showing of proof to support the defendant's claim. *Id.* ¶¶ 49-52 ("Thus, we are compelled to assess the prejudice factor with little assistance from [the d]efendant."). We also note *Ochoa*'s agreement with the determination by the Court of Appeals in that case that more than twenty-two months of pretrial incarceration "is the precise kind of prejudice the speedy trial right was intended to prevent." *Id.* ¶ 50 (text only) (quoting *State v. Ochoa*, 2014-NMCA-065, ¶ 23, 327 P.3d 1102).

**{133}** Contrary to *Serros* and *Ochoa*, the district court stated, regarding Defendant having "been in custody for the entire duration of this case," that "[t]ime alone . . . is insufficient to carry forward Defendant's burden to show prejudice from pretrial incarceration" (citing *Garza*, 2009-NMSC-038, ¶ 35). The district court also stated, "[W]hile the length of pretrial incarceration is a factor to be considered, oppressiveness also depends on 'what prejudicial effects the defendant has shown as a result of the incarceration.'" (quoting *Garza*, 2009-NMSC-038, ¶ 35). Here the district court treated length of incarceration as a necessary rather than potentially sufficient condition, in contrast to *Serros* and *Ochoa*. By presuming that the length of Defendant's incarceration could not suffice to show prejudice, the district court did not apply the correct law to the facts.

**{134}** Third, the district court, quoting *Garza*, 2009-NMSC-038, ¶ 25 (citation omitted), misapplied *Garza*'s statement that "'The reasons for a period of delay may either heighten or temper the prejudice to the defendant caused by the length of the delay.'" Underlying this quotation is *Barker*'s analysis of "[a] deliberate attempt to delay the trial in order to hamper the defense." *See Barker*, 407 U.S. at 531. In other words, *Garza*'s statement regarding heightening or tempering relates to analysis of the *reason-for-delay* factor, not the *actual prejudice* factor. Again, the district court's reasoning in this regard resembles that of *McGhee*: the district court improperly blamed Defendant for the *prejudice arising from solitary confinement* rather than restricting its assessment of Defendant's blame to the *reason-for-delay* factor. This misapplication of *Garza* further erodes any remaining basis for *Gurule*'s deference to the district court's purported factual finding regarding prejudice.

**{135}** In sum, the district court's conclusion within its actual prejudice analysis that Defendant did not suffer undue prejudice was based on (1) legally unsupported negation of record evidence of prejudicial effects from Defendant's incarceration, (2) an erroneous legal presumption that the length of pretrial incarceration cannot be sufficient to show prejudice, and (3) an erroneous application of *Garza*'s heightening-or-tempering principle. Regarding the second of those errors, we note that *Gurule* is

correct that we have never announced a bright-line rule "that the length of time served in pretrial incarceration is prejudicial on its face," *Gurule*, 2025-NMSC-010, ¶ 52. Regardless, the district court was not free to ignore *Serros* and *Ochoa* nor to commit the other errors above in reaching its conclusion, and accordingly that conclusion does not warrant deference. Again, the majority importantly overlooks these errors by the district court.

## C. *Gurule*'s Resulting Prejudice Analysis Is Unsound

**{136}** The result of adopting *McGhee*'s negation-of-prejudice rationale and of deferring to the district court is a truncated analysis in *Gurule* regarding whether Defendant suffered prejudice from oppressive pretrial incarceration. *See id.* ¶¶ 44-45. That two-paragraph analysis in fact does not even consider length of pretrial incarceration, despite our express test for the prejudice subfactor of oppressive pretrial incarceration: "The oppressive nature of the pretrial incarceration depends on *the length of incarceration*, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Garza*, 2009-NMSC-038, ¶ 35 (emphasis added); *Serros*, 2016-NMSC-008, ¶ 89 (same); *Ochoa*, 2017-NMSC-031, ¶ 51 (same). Instead, *Gurule* merely negates Defendant's showing of prejudicial effects under *McGhee*, with reference to *Fierro*, 2012-NMCA-054. *See Gurule*, 2025-NMSC-010, ¶¶ 44-45. *Gurule* characterizes *Fierro* as "on point for [its] analysis of prejudice," wherein "the failure to show concrete prejudice defeated the defendant's speedy trial claim" despite fifty-five months of pretrial incarceration, mostly served in segregation. *Gurule*, 2025-NMSC-010, ¶ 43.

**{137}** In effect, *Gurule*'s analysis of the oppressive-pretrial-incarceration subfactor seemingly elevates the analysis in *Fierro* over that in *Serros* and *Ochoa*, despite *Fierro* being a Court of Appeals case that predates that pair of Supreme Court cases. This use of *Fierro* is especially suspect where *Fierro*'s analysis of the relevant subfactor did not contemplate that length of pretrial incarceration can establish prejudice without an affirmative showing of prejudicial effects. *See Fierro*, 2012-NMCA-054, ¶¶ 56-58. Obviously, the *Fierro* Court did not have the benefit of this Court's subsequent precedential cases, but *Gurule*'s approval of *Fierro*'s analysis further reveals—whether from overlooking or misapprehending the law—its mystifying reluctance to follow *Serros* and *Ochoa*.

**{138}** Relatedly, *Gurule* also misapprehends *Ochoa* by insisting that despite "a lengthy incarceration, . . . the [d]efendant must still show some particularized prejudice from his pretrial incarceration." *Gurule*, 2025-NMSC-010, ¶ 53. For support, *Gurule* quotes *Ochoa*'s quotation of *Garza* for the proposition that "[W]e will not speculate as to the impact of pretrial incarceration on a defendant." *Gurule*, 2025-NMSC-010, ¶ 53 (text only) (quoting *Ochoa*, 2017-NMSC-031, ¶ 49 (quoting *Garza*, 2009-NMSC-038, ¶ 35)). Importantly, *Garza* and *Ochoa* in this context reject *speculation*, not *reasonable inference*—a distinction commonly recognized by this Court. *See Madrid v. Brinker Rest. Corp.*, 2016-NMSC-003, ¶ 18, 363 P.3d 1197 (distinguishing between "mere speculation or guesswork" and "reasonable inference" where "[a]n inference is not a supposition or a conjecture, but is a logical deduction from facts proved and guess work

is not a substitute therefor" (text only)). *Gurule* apparently concludes that a court cannot reasonably infer prejudice from the length of incarceration, but such a reading is squarely contradicted by *Ochoa* itself: the *Ochoa* defendant "*did not offer proof* . . . to support his prejudice claim," and "[t]hus, [this Court was] compelled to assess the prejudice factor with little help from [the d]efendant" but conducted such an assessment nonetheless. *Ochoa*, 2017-NMSC-031, ¶ 49 (emphasis added). In other words, the *Ochoa* Court did in fact determine under the oppressive-pretrial-incarceration subfactor "that [the d]efendant's two-year incarceration resulted in prejudice" despite no affirmative showing of proof of prejudicial effects. *Id.* ¶ 57. The Court explained that "[w]hen, as in this case, a defendant was continuously incarcerated for an extended period of time, it requires no speculation to determine that the defendant suffered some prejudice." *Id.*

**{139}** As Defendant recognizes, *Gurule* further misapprehends the law in stating that the *Ochoa* Court "could not say whether the prejudice [based solely on the length of the pretrial incarceration] was undue." *Gurule*, 2025-NMSC-010, ¶ 53 (citing *Ochoa*, 2017-NMSC-031, ¶ 61). In actuality, the cited paragraph in *Ochoa* addressed the anxiety-and-concern subfactor of prejudice analysis, not the oppressive-pretrial-incarceration subfactor. *See* 2017-NMSC-031, ¶ 61. Importantly, unlike the oppressive-pretrial-incarceration subfactor, analysis of the anxiety-and-concern subfactor does not include consideration of the length of pretrial incarceration as "a counterweight to a defendant's burden of production." *See id.* ¶ 54. Thus, regarding the *anxiety-and-concern* subfactor, the *Ochoa* Court could "only speculate as to whether such prejudice was *undue*." *Id.* ¶ 61. In contrast, the *Ochoa* Court clearly expressed in relation to the oppressive-pretrial-incarceration subfactor that the prejudice factor weighed in the defendant's favor, although the balance of the four *Barker* factors together did not. *See id.* ¶¶ 59, 64 ("[The d]efendant suffered the precise kind of prejudice the speedy trial right is meant to prevent." (internal quotation marks and citation omitted)); *id.* ¶ 64 ("[W]e presume that [the d]efendant was prejudiced by his two-year, continuous incarceration. This prejudice is obvious and would be unjust to ignore."); *id.* ¶ 65 ("[The d]efendant's burden of showing particularized prejudice was counterbalanced by the length of his pretrial incarceration.").

**{140}** For these reasons, the prejudice analysis in *Gurule* is unsound, and Defendant's Motion should be granted either to correct this precedential analysis or to "depublish" the opinion.

**{141}** "The identification and protection of fundamental rights is an enduring part of the judicial duty to interpret the Constitution." *Obergefell v. Hodges*, 576 U.S. 644, 663 (2015). *Gurule* lost sight of this duty, instead contorting and selectively applying our jurisprudence to rationalize doling out a fundamental constitutional right in a begrudging and parsimonious manner. Almost seventy months—close to six years—elapsed between Defendant's arrest and trial, yet *Gurule* goes so far as to charge him with the State's negligent or administrative periods of delay; under such doubtful accounting, to excuse its tally of two years of the State's inexcusable delay; to adopt a radical and unsupported blame assessment principle, allowing New Mexico courts henceforth to ignore actual prejudice; and to overstate or otherwise misrepresent our caselaw and to

misapply deference to the district court in arriving at the inconceivable conclusion that Defendant suffered no actual prejudice from extensive time in solitary confinement, regardless of the cause. In short, as detailed herein, the majority's numerous and weighty instances of overlooking and misapprehending the law do harm to our constitutional jurisprudence.

**{142}**  "[T]here is a societal interest in bringing an accused to trial," as this Court recognized in *Garza*, but "[t]he heart of the right to a speedy trial is preventing prejudice to the accused." 2009-NMSC-038, ¶ 12. Because the numerous flaws in *Gurule* threaten to upend our speedy trial jurisprudence, we strongly urge the majority to reconsider its denial of Defendant's Motion for Rehearing. In the alternative, we respectfully dissent.

**C. SHANNON BACON, Justice**

**I CONCUR.**

**MICHAEL E. VIGIL, Justice**